PER CURIAM.
Appellant challenges his convictions and sentences for various crimes arising out of the robbery of a restaurant. As one of the issues raised on appeal, appellant argues that the trial court’s explanation to the jury as to why one of the victims of the crime would not be available for cross-examination unfairly prejudiced his right to a fair trial. We reverse as to this issue making it unnecessary for us to reach the other issue raised by appellant in this appeal.
On the morning of June 7, 1997, a Sonny’s Bar-B-Q restaurant in Lake City, Florida was robbed at gunpoint by a black male. The man had come into the restaurant before it opened, pointed a .38 caliber revolver at Robert Hockett, the general manager of the restaurant, and demanded all the money in the restaurant. An employee by the name of Fred Queen was in the restaurant at the time and was ordered by the gunman to lie down on the floor while Hockett got the money. After Hockett gave the gunman all the money in the restaurant, the gunman moved Hock-ett and Queen into the restaurant’s cooler. The gunman told the two men that he *736 would blow their heads off if they came out of the cooler. After about two or three minutes in the cooler, Hockett came out, did not see the gunman, and called the police. Both Hockett and Queen identified appellant as the gunman from a photographic lineup.
Appellant was charged with one count of robbery while armed with a firearm, two counts of aggravated assault with a firearm, and one count of burglary while armed with a firearm. At trial, both Hockett and Queen testified as to the facts of the robbery and their subsequent identifications of appellant as the gunman.
At the conclusion of Queen’s direct examination testimony, the trial court announced a short morning recess before defense counsel conducted his cross-examination. After the jury left the courtroom, appellant verbally threatened Queen (who is also African-American) by calling him a “pussy ass nigger” and yelling that he “should kick [his] ass.” Queen ran out of the courtroom.
When the recess concluded, Queen could not be found. The trial court advised the attorneys of this fact outside the presence of the jury. The trial court ruled that appellant, through his conduct, had waived his right to cross-examine Queen. The trial court also ruled that it would continue with the trial and advise the jury as to why Queen would be unavailable for cross-examination. Defense counsel objected both to the trial court’s ruling as to appellant’s waiver of his right to cross-examine the witness and to the trial court’s ruling that it would advise the jury as to why the witness would be unavailable for cross-examination.
After the jurors were brought back into the courtroom, the trial court instructed them as follows:
Members of the jury, during the recess, we had a complication in the trial which means that the witness will not be here for cross-examination. That’s part of the reason for our lengthy delay. What I am about to tell you would not normally be told to a jury because it’s conduct which occurred outside of your presence. But the Court is faced with only two choices, declare a mistrial and send you home or proceed.
Since the conduct I’m about to tell you about — since the conduct I’m about to tell you about occurred because of the conduct of the defendant, I’m going to have to tell you what occurred outside of your presence and why the witness will not be here, and I’ve already stated on the record the legal reasons that you’re going to hear this.
When you exited the courtroom, when I was about to exit the courtroom, as the witness, Fred Queen, sat down and was walking out of the courtroom, the defendant, Anthony Collins, stood up and pointed to the witness and said, Pussy ass nigger, crying like that. I ought to kick your ass. The officers began to restrain Mr. Collins, and he was still yelling, pussy ass nigger, I should kick your ass. The officers made Mr. Collins sit down. He still yelled, pussy ass nigger. And they tried to make him sit down again.
Mr. Queen, the witness, then continued to leave the courthouse, and the Court ruled that because of the emotional strain the witness is already under, the counseling he had received, he has— he ran to the police department and hasn’t been seen since, so we will not have him available in the trial. And when we do not have a witness available and — because of the conduct of the defendant, you have to know the reason that the Defense cannot cross-examination the State’s witness.
Defense counsel renewed his previous objection to the giving of this instruction.
The trial resumed and the jury ultimately found appellant guilty of the charges against him. During their deliberation, the jurors had asked the following question of the trial court: “Did Anthony and Fred Queen know each other?” The trial *737 court had advised the jurors in writing that it could not answer that question.
Appellant contends that the trial court’s explanation to the jury regarding Queen’s unavailability for cross-examination unfairly prejudiced his right to a fair trial. Although the State correctly points out that “trial courts ... have broad discretion in the procedural conduct of trials,” Moore v. State, 701 So.2d 545, 549 (Fla.1997), the state has cited, and a search of Florida case law has revealed, no case which requires a trial court to instruct the jury on the reasons for the unavailability of a witness. In this case, the trial court could easily have advised the jury of Queen’s unavailability for cross-examina tion without mentioning the reasons for his unavailability. Had the trial court been concerned about any improper inferences the jury might draw from the unavailability of the witness, it could have instructed the jury to simply draw no inferences from the witness’ unavailability. Instead, the trial court advised the jurors of a highly prejudicial incident which had occurred outside their presence and which really had no bearing on their determination of appellant’s guilt or innocence. The trial court, therefore, abused its discretion by instructing the jury in the manner it did on the reason why Queen was unavailable for cross-examination. See Clayton v. Commonwealth, 786 S.W.2d 866, 868 (Ky.1990)(“The only instruction regarding the absence of the witness which could have been given, had it been requested, was one stating that he was unavailable to either side.”).
The state argues that any error in the trial court’s explanation to the jury for Queen’s unavailability for cross-examination should be deemed harmless beyond a reasonable doubt. We cannot agree. First, even if the jury had already seen Queen’s fear of appellant during his direct examination, a witness’ showing of fear while testifying does not necessarily implicate guilt on the part of the defendant; on the other hand, physical threats by the defendant to the witness might. See Koon v. State, 513 So.2d 1253, 1256 (Fla.1987); Manuel v. State, 524 So.2d 734, 735 (Fla. 1st DCA 1988). Second, even if the testimony of Robert Hockett would have been sufficient to convict appellant of these offenses without Queen’s testimony, the question asked by the jurors during their deliberations indicates that they may have considered, during those deliberations, the substance of the outburst made by appellant toward Queen which had been reported to them by the trial court. Under these circumstances, we cannot conclude that the trial court’s explanation to the jury regarding Queen’s absence had no impact on the outcome of these proceedings.
We, therefore, reverse appellant’s convictions and resulting sentences and remand for a new trial.
BENTON, J., and SHIVERS, DOUGLASS B., Senior Judge, concur; BOOTH, J., dissenting without written opinion.