801 So.2d 244 (2001)
Uton CUNNINGHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-667.
District Court of Appeal of Florida, Fourth District.
December 12, 2001.
Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
During appellant's trial for sexual battery and lewd assault on a child, the court permitted a psychologist to explain why the child was "emotionally unavailable" to testify in the proceeding. Because the psychologist's testimony amounted to vouching for the credibility of the child's out-of-court statements, was irrelevant to the issues at trial, and was highly prejudicial, we hold that it was error to admit the testimony. We reverse for a new trial.
Appellant, his wife, and their two children moved into the home of a female friend. This woman resided with her four children, including the child-victim ("S.M."). When appellant and his family moved in, they occupied the bedroom of S.M., who was ten at the time. S.M. moved into her sisters' bedroom. While S.M. was upset about losing her bedroom *245 to appellant's family, she was upset only with appellant himself.
Approximately two weeks after appellant's family moved in, S.M.'s mother awoke one night to S.M.'s banging on her door. When she opened the door, S.M. told her that appellant had kissed her. The mother went looking for appellant and found him under the kitchen table. The mother called the police, who arrested appellant. After the officer at the scene read him his rights, appellant admitted kissing S.M. and rubbing her leg. However, the officer who testified to those admissions was impeached by inconsistent pretrial testimony.
The officers collected evidence, including the bedsheets upon which the incident allegedly occurred and appellant's clothing. None turned out to be suitable for DNA testing. S.M. was also examined that night at a sexual assault treatment center, and no evidence of sperm or seminal fluid was found. Dr. Gibson, who examined S.M., found evidence of vaginal irritation which could have been caused by penetration, but it could also have been caused by simple rubbing or itching, or a vaginal infection. Dr. Gibson also found evidence of some healed transections/tears in the vagina. Because these were healed, evidence of recent penetration was less likely. A defense expert testified that these could have been present from birth and that if adult penile penetration had occurred, one would expect to see some fresh tears, dried blood, or redness in the hymen area which was not found. A detective, who had a limited conversation with S.M. at the center, testified that S.M. told him she had a problem with appellant that night.
Appellant was interviewed by the detectives the evening of the incident and appeared cooperative. He repeatedly said that he needed help and counseling. After several hours at the police station, he admitted that he went into S.M.'s room where she was sleeping. He touched her shoulder, breast, and buttocks with his hands. He also kissed her on the lips and put his tongue in her mouth. When S.M. did not respond, he thought she did not mind, and he touched her vagina with his hand, never inserting his fingers. He then asked the interrogating officers if his talking with them was "for my help or yours?" The officer responded that it would help everyone, particularly S.M. who also would need help. After this exchange, appellant told the officers that he put his penis in her vagina. He was inside her for about ten minutes but did not ejaculate.
The next day, the detective took S.M.'s recorded statement. She testified that she felt appellant on top of her, kissing her lips. She then said appellant "put something in my private part," and he kissed her breast. She screamed for her mom, and appellant ran out of the room with his clothes in hand.
The state charged appellant with sexual battery upon S.M., a person less than 12 years of age, by causing his penis to penetrate or unite with the victim's vagina (Count I), indecent assault "by causing his mouth to touch the breast" of a child under the age of 16 years (Count II), and indecent assault "by kissing" a child under the age of 16 years "on the lips" (Count III).
At a pretrial hearing on the state's request to admit the victim's statements into evidence, S.M. testified but became emotionally upset and could not continue. Dr. Sherrie Bourg-Carter, a licensed clinical and forensic psychologist, then testified regarding S.M.'s competency to testify. In a later hearing, Dr. Bourg-Carter also opined as to S.M.'s unavailability to testify in accordance with section 90.803(23), Florida Statutes (1999). Dr. Bourg-Carter concluded that the child was competent to testify but would suffer severe emotional *246 harm if required to testify either live in court or by way of closed circuit television. Based upon Dr. Bourg-Carter's testimony, the court entered an order permitting the admission of S.M.'s statements at trial.
At trial, over defense objection, the state called Dr. Bourg-Carter for the purpose of explaining to the jury why S.M. was unavailable to testify. Appellant argued that the child's unavailability was a finding that the trial court made, not an issue for the jury. Permitting testimony regarding the child's emotional responses and her emotional trauma was not relevant to any issue the jury was required to determine and was highly prejudicial. To prevent the prejudice, appellant represented that he would not argue that the child should have been present to testify. He also requested a jury instruction that the jury should not consider why the child did not testify live. The court rejected these arguments and permitted Dr. Bourg-Carter to testify.
Dr. Bourg-Carter testified that she had been asked by the court to give her opinion on S.M.'s competency to testify, as well as her emotional availability to testify. She opined that S.M. was able to recall information and communicate it, had a moral sense of obligation to tell the truth (the difference between fantasy and reality), and was competent to testify. However, when the doctor brought up appellant and this case, S.M.'s emotional state and behavior "changed dramatically." S.M. became anxious, stopped all eye contact, stared off into space, rubbed her legs with her hands, twisted her hands, got an upset stomach, and sometimes cried. Over objection, Dr. Bourg-Carter opined that S.M. was "emotionally unavailable to testify" because she would most likely "shut down emotionally" and "not answer questions."
On cross-examination, Dr. Bourg-Carter testified that she has had experience with children who have fabricated stories, and they tend to shut down and not answer questions as well. But, on redirect, she stated that children who fabricate shut down in a different way. This latter form of shutting down was not the same type of behavior S.M. exhibited.
The jury found appellant guilty of the lesser included offenses of attempted sexual battery upon a child and attempted indecent assault for the act of kissing the victim's breast. It found appellant guilty as charged of indecent assault by kissing the victim on the lips. The court found appellant to be a sexual predator, adjudicated him guilty, and sentenced him on all counts. This timely appeal followed.
We find merit in appellant's first argument, that the trial court abused its discretion in permitting Dr. Bourg-Carter to explain why the child-victim was unavailable to testify before the jury. Section 90.803(23) provides a hearsay exception for admitting a child-victim's out-of-court statement where, in a proceeding outside the presence of the jury, the court determines that the statement provides sufficient safeguards of reliability and the child either testifies or is unavailable as a witness. "Unavailability shall include a finding by the court that the child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm ...." § 90.803(23)(a)(2)(b), Fla. Stat. (1999) (emphasis added). Once these findings are made by the trial court, the issue is whether the testimony supporting them is admissible in evidence.
At the outset, we conclude that the testimony was not relevant evidence. S.M.'s competency as a witness or her emotional trauma which prevented her from testifying in person were not relevant to any material issue in this case. Indeed, the state offers no reason for the admission of *247 Dr. Bourg-Carter's testimony other than that it was relevant to the issue of credibility whether S.M.'s absence indicated her testimony lacked credibility. However, if the expert's testimony was offered to support the child's credibility, it amounted to impermissible bolstering of her hearsay statements and should not have been admitted.
An expert cannot comment on or vouch for a child-victim's credibility. See Feller v. State, 637 So.2d 911, 915 (Fla. 1994); State v. Townsend, 635 So.2d 949, 958 (Fla.1994); Tingle v. State, 536 So.2d 202, 205 (Fla.1988). While the Tingle court suggested that expert testimony may be helpful to a jury in assessing the veracity of a child sexual abuse victim by "`generally testifying about a child's ability to separate truth from fantasy,'" the court concluded that "the ultimate conclusion as to the victim's credibility always will rest with the jury. The expert will merely be equipping the jury with the knowledge necessary to make this determination." Id. at 205 (quoting United States v. Azure, 801 F.2d 336, 340 (8th Cir.1986)). Interpreting Tingle, the second district explained that even if an expert is not asked directly whether the child victim is believable, such direct questioning is not necessary under Tingle for questions to run afoul of the prohibition of an expert vouching for a witness. See Page v. Zordan, 564 So.2d 500, 501-02 (Fla. 2d DCA 1990). It is sufficient that the court found that the action came down to a credibility contest between the child accuser and the accused and that the purpose of the expert testimony was to put before the jury opinions as to credibility of the accuser and culpability of the accused. See id.
We decided a similar issue, also involving Dr. Bourg-Carter in Hitchcock v. State, 636 So.2d 572 (Fla. 4th DCA 1994). In Hitchcock, we held that even though Dr. Bourg-Carter did not overtly vouch for the credibility of the child witness by testifying to the child's believability, "if the juxtaposition of the questions the State asked Bourg gave the jury the clear impression that Bourg believed the victim was telling the truth," that testimony was improper. Id. at 575.
While Dr. Bourg-Carter did not directly testify in this case that she believed the child victim, she told the jury the child understood what it meant to tell the truth and what repercussions would occur if she did not. This testimony was offered ostensibly to prove the child's competency, but what it also suggested to the jury was that the child's testimony could be relied upon because the expert found that S.M. knew she had the obligation to tell the truth. The expert's invasion of the jury's province is particularly troublesome here because, unlike Tingle, the jury never had the opportunity to see S.M. testify in person. Therefore, because the jurors were unable to "size up" the victim themselves, Dr. Bourg-Carter's analysis that S.M. understood the necessity of telling the truth was all the more important.
Additionally, the explanation of the victim's unavailability was prejudicial and unnecessary. About all that it revealed was that the victim was emotionally "unavailable" to testify because she was afraid of appellant, to the point that she thought he would do something to her in the courtroom. Dr. Bourg-Carter also testified that S.M. became distant, as though she had left the room mentally when asked about the event, which the doctor testified was a diagnostic sign of trauma. Thus, the jury could glean from Dr. Bourg-Carter's testimony that her emotional "unavailability" was the result of being required to testify about events that were traumatic in her life in front of a person whom she is still extremely fearful and *248 who was responsible for the trauma. This testimony is not relevant to any issue in the case and is unfairly prejudicial to appellant.
Collins v. State, 774 So.2d 735 (Fla. 1st DCA 2000), involves the issue of explaining a witness' unavailability to the jury. After one of the witnesses for the state had testified on direct and the jury was excused for a short recess, the defendant yelled and threatened the witness as he left the courtroom. The witness did not return for cross-examination. When the jury returned, the trial court explained in detail about what the defendant had said to the witness as an explanation of the witness' failure to appear for cross-examination. On appeal, the defendant claimed that this explanation prejudiced his right to a fair trial. In agreeing that the trial court's instruction was prejudicial, the court stated:
Although the State correctly points out that "trial courts ... have broad discretion in the procedural conduct of trials," Moore v. State, 701 So.2d 545, 549 (Fla. 1997), the state has cited, and a search of Florida case law has revealed, no case which requires a trial court to instruct the jury on the reasons for the unavailability of a witness. In this case, the trial court could easily have advised the jury of Queen's unavailability for cross-examination without mentioning the reasons for his unavailability. Had the trial court been concerned about any improper inferences the jury might draw from the unavailability of the witness, it could have instructed the jury to simply draw no inferences from the witness' unavailability. Instead, the trial court advised the jurors of a highly prejudicial incident which had occurred outside their presence and which really had no bearing on their determination of appellant's guilt or innocence. The trial court, therefore, abused its discretion by instructing the jury in the manner it did on the reason why Queen was unavailable for cross-examination. See Clayton v. Commonwealth, 786 S.W.2d 866, 868 (Ky.1990)("The only instruction regarding the absence of the witness which could have been given, had it been requested, was one stating that he was unavailable to either side.").
Id. at 737.
We agree with Collins that an explanation as to a witness' unavailability is not required. That is especially true in the case of the unavailability of a child witness due to the child's potential trauma if the child were to testify, because such testimony is unfairly prejudicial to the defense, tending to inflame the passion and sympathy of the jury. See, e.g., Thompson v. State, 565 So.2d 1311, 1314 (Fla.1990) (noting that arousing unwarranted jury sympathy for the victim interjects matters not germane to the issue of guilt). As such, the trial court abused its discretion in admitting Dr. Bourg-Carter's testimony.
We cannot conclude that the admission of this evidence was harmless error, even though the jury heard a confession from appellant. Although appellant confessed, he argued that his confession was coerced through the detective's deception and promises of help. Further, it is clear that the jury did not believe appellant's confession because it did not find him guilty of sexual battery. There was nothing other than the statements from appellant and S.M. to prove the crime of sexual battery. There was no physical evidence, and the examination of S.M. did not reveal that a penetration occurred. While both the victim and appellant stated that appellant had kissed the victim, their statements conflicted on whether appellant had kissed her breasts. Because S.M.'s credibility was crucial to the state's case, the error in *249 improperly bolstering her credibility and creating sympathy for her emotional trauma cannot be deemed harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986).
For these reasons, we reverse and remand for a new trial. We decline to address the sentencing issue as the sentences are also vacated.
GUNTHER and GROSS, JJ., concur.