[No. 84204-3. En Banc.]

Argued February 15, 2011. Decided November 3, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN ALLEN BEADLE, *Petitioner*.

*Eric J. Nielsen* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Jonathan L. Meyer, Prosecuting Attorney,* and *Colin P. Hayes, Deputy,* for respondent.

¶1 Madsen, C.J. — Steven Beadle appeals his convictions for child molestation in the first degree. At a pretrial child hearsay hearing, the alleged victim, four-year-old B.A.,[1] had what appeared to be a serious emotional breakdown and refused to testify. The court found the child unavailable to testify at trial and admitted her out-of-court disclosures to family members, mental health providers, a child protective services worker, and a law enforcement officer, pursuant to RCW 9A.44.120.

---

[1] Because B.A. is a minor, this opinion refers to her by her initials. Portions of the record refer to her by the initials B.R.A.

¶2 Beadle appealed, arguing that the trial court committed reversible error in finding B.A. unavailable and in admitting the child hearsay statements. He also argued that the trial court erred in admitting irrelevant and unduly prejudicial evidence of B.A.'s emotional breakdown. The Court of Appeals affirmed Beadle's convictions. We also affirm.

## FACTS

¶3 In January 2006, three-year-old daughter, B.A., announced to her mother, Lisa Burgess (Burgess), that her "potty" hurt.[2] I Verbatim Report of Proceedings (VRP) (Jan. 30, 2008) at 40. When questioned, B.A. explained that Beadle, Burgess' live-in boyfriend, had tried to put his "tail" inside her.[3] *Id.* at 31. In response to her daughter's disclosure, Burgess "freaked out" and immediately confronted Beadle in B.A.'s presence. *Id.* B.A. began to cry. According to Burgess, Beadle "also cried, he freaked out screaming at her, do you love daddy, daddy's going to go away to prison for life if you say something like this to anybody." *Id.* B.A. appeared frightened by this outburst. Shortly thereafter, Beadle was incarcerated on an unrelated matter, and he had no further access to B.A.

¶4 Around April 2006, Burgess noticed that B.A. had begun drawing pictures depicting "tails." According to Burgess, "she would say it or draw it and then she would instantly throw it away or crumple it up or scribble over it. And she would always say, 'I don't want to get in trouble.' " *Id.* at 37.

¶5 In February 2007, B.A. made another drawing of a "tail" and told Damon Burgess (Damon),[4] Burgess's hus-

---

[2] B.A. referred to her vagina as her "potty."

[3] Previously, B.A. had told her mother that Beadle used that term to refer to a penis and had instructed B.A. to do the same.

[4] For clarity, we refer to Damon Burgess as "Damon." We intend no disrespect.

band, what it depicted. When Damon asked B.A. whose "tail" she had drawn, she replied that it was Beadle's "tail" and that Beadle had helped her wash her hands after touching it, because "it was all sticky." *Id.* at 69. Damon asked B.A. to demonstrate how she had touched Beadle's "tail," and B.A. stroked Damon's finger. Throughout this exchange, B.A. seemed extremely anxious about getting in trouble.

¶6 Detective Carl Buster, a detective at the Centralia Police Department and Ronnie Jensen, a Child Protective Services (CPS) worker, interviewed B.A. the next day. Jensen was present to assist the police department with the interview. *Id.* at 104. Initially, Jensen found B.A. happy and outgoing. However, when Detective Buster asked B.A. if she knew why she was there, she "immediately shut down." *Id.* at 106. When Jensen used a sheet of paper to shield Detective Buster from B.A.'s view, B.A. told Jensen that she had touched Beadle's tail and that it felt "squishy" and had gotten wet. *Id.* at 108. She pointed to the crotch of a stuffed bear to show Jensen where Beadle's "tail" was located.

¶7 Burgess sought counseling for B.A. at Cascade Mental Health Care. During the initial assessment, B.A. told Cary McAdams, a licensed mental health clinician, that she had touched Beadle's "tail" on three occasions and that she sometimes sat on his lap with a towel, with his "tail" between them. She also described her "potty" hurting. In one therapy session, B.A. picked up a male doll and a baby doll and, without prompting, offered to show her therapist, Margaret Heriot, what Beadle had done. She performed the demonstration under the table, explaining that she was "embarrassed." *Id.* at 49.

¶8 B.A. was diagnosed with posttraumatic stress disorder (PTSD) and sexual abuse of a child.[5] *Id.* at 81. According to Heriot,

---

[5] McAdams testified that "sexual abuse of a child" is a psychiatric condition listed in the DSM-IV (AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 2000)).

[t]he symptoms of post traumatic stress disorder that she exhibited was she was afraid of men, she was very clingy, she was very afraid to be left alone from her mother, she didn't want to be away from her mother. She had bad dreams. She had started urinating on herself, which [sic] she was totally potty trained, and she had a couple of accidents, that's another symptom. She's very anxious, worried about a lot of things, checking constantly, asking the same question over and over again, where are we going, what are we going to do now, are you okay, with her mother, a lot of anxiety.

*Id.* at 96. Heriot also indicated that children who are sexually abused by a family member often feel conflicted toward their abuser, harboring negative feelings about the abuse but at the same time, feeling close to the abuser and enjoying the attention. Heriot opined that B.A. displayed such conflicting feelings and had developed a "trauma bond" with Beadle. I VRP (Suppression Hr'g, Nov. 16, 2007) at 19.

¶9 Beadle was charged by third amended information with three identical counts of child molestation in the first degree. He pleaded not guilty on all three counts.

¶10 A three-day pretrial child hearsay hearing was held in the Lewis County Superior Court. According to Heriot, as the date of the hearing approached, B.A. grew increasingly reticent in therapy, refusing to discuss the abuse and insisting that she was finished discussing the topic. Heriot indicated that this behavior was typical of children who have been abused and that talking about abuse after the fact is "a very scary thing for them to do." *Id.* at 23.

¶11 On the first day of the hearing, B.A. refused to enter the courtroom. Instead, according to Jensen, "when it came to actually walking to the door, [B.A.] just crumbled, ran to a corner, stayed in that corner for about an hour crying and just refused to talk." I VRP (Jan. 30, 2008) at 55. Several adults tried to coax B.A. out of the corner, but she remained "balled up in a fetal position in the corner of one of the seats out in the hallway with her head buried between the seat

and the wall," refused to make eye contact with anyone, and hid her face under her hair. *Id.* at 112. Eventually, Jensen was able to calm B.A., but she remained steadfast in her refusal to testify.

¶12 Later in the day, the State again attempted to convince B.A. to testify, but B.A. refused. The State proposed a procedure by which B.A. would testify via a victim advocate, should she agree to testify later in the proceedings.[6] Just before the hearing was adjourned, the prosecutor informed the court that B.A. was "willing to come into the courtroom." I VRP (Suppression Hr'g, Nov. 16, 2007) at 47. However, citing a busy docket, the court adjourned the hearing for the day.

¶13 On the second day of the hearing, the State attempted again to persuade B.A. to "come in the courtroom." II VRP (Suppression Hr'g, Nov. 20, 2007) at 45. The prosecutor asked the court if Burgess could be present in the courtroom when and if B.A. took the stand. The court assented. However, after a break in proceedings, the State reported that B.A. remained unwilling to enter the courtroom.

¶14 At the conclusion of the hearing, the trial court found that B.A. was unavailable to testify, citing the "substantial amount of crying and screaming coming from the public portion of the hallway outside the courtroom door" on the first day of the hearing and noting that B.A. had resisted "any and all attempts to bring her into the courtroom." III VRP (Suppression Hr'g, Dec. 19, 2007) at 24. In a subsequent written order, the trial court also noted that B.A. had been diagnosed with PTSD and sexual abuse of a child. In its written order, the trial court held that "the evidence does not suggest that [B.A.] may be able to testify by the use of closed-circuit television pursuant to RCW

---

[6] *See State v. Leavitt*, 111 Wn.2d 66, 758 P.2d 982 (1988) (upholding procedure in which child testified by whispering responses to social worker, who relayed the responses to the court).

9A.44.150." Clerk's Papers (CP) at 42.[7] Beadle did not object to these rulings.[8]

¶15 In addition, the trial court held that under *State v. Shafer*, 156 Wn.2d 381, 128 P.3d 87 (2006), B.A.'s disclosures to Jensen and Detective Buster, like her other out-of-court statements, were nontestimonial. Finally, the court held that B.A.'s out-of-court statements were admissible under RCW 9A.44.120 because the surrounding circumstances provided sufficient indicia of reliability, and B.A.'s allegations were supported by corroborative evidence.

¶16 On the first day of trial, the State brought a motion in limine to introduce evidence as to B.A.'s "complete breakdown" on the first day of the child hearsay hearing. I VRP (Jan. 30, 2008) at 13. Over Beadle's objection, the court allowed the State to introduce limited testimony regarding B.A.'s resistance to testifying.

¶17 The jury convicted Beadle of two counts of first degree child molestation and acquitted him of the third count. In addition, the jury returned special verdicts finding that Beadle had used his position of trust or confidence in committing both counts of child molestation and that both counts were part of an ongoing pattern of sexual abuse. The court imposed an exceptional sentence.

¶18 On appeal, Beadle challenged the trial court's finding that B.A. was unavailable to testify. Br. of Appellant at 1. Beadle also contended that the trial court had erred in

---

[7] Under certain circumstances, on motion of the prosecuting attorney, a court may allow a child witness to testify outside the presence of the defendant and jury, using a closed-circuit television system to allow the defendant and the jury to hear the testimony. The court must find that "requiring the child witness to testify in the presence of the defendant will cause the child to suffer serious emotional or mental distress that will prevent the child from reasonably communicating at the trial" and that "no less restrictive method of obtaining the testimony exists that can adequately protect the child witness from the serious emotional or mental distress." RCW 9A.44.150(1)(c), (g).

[8] Although Beadle did not preserve this issue for appeal by objecting at trial, we review unpreserved errors where the petitioner is alleging manifest constitutional error. RAP 2.5(a)(3). We also note that the State does not explicitly argue that Beadle failed to preserve this issue for appeal. *See* Suppl. Br. of Resp't at 18.

admitting "irrelevant and unfairly prejudicial" evidence of B.A.'s behavior at the courthouse and that the admission of testimonial hearsay statements violated his right to confrontation. *Id.*

¶19 After oral argument, the Court of Appeals requested supplemental briefing on the application of *State v. Smith* to the instant case. Suppl. Br. of Appellant at 1; *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002) (before finding a child unavailable under RCW 9A.44.120, court "must consider the use of closed-circuit television pursuant to RCW 9A.44.150 if there is evidence that the child victim may be able to testify in an alternative setting").

¶20 In a split, unpublished opinion, the Court of Appeals affirmed Beadle's convictions. *State v. Beadle*, noted at 154 Wn. App. 1021, 2010 WL 282405, 2010 Wash. App. LEXIS 121. The majority distinguished *State v. Smith* and held that the trial court did not abuse its discretion in finding B.A. unavailable to testify. *Beadle*, 2010 WL 282405, at *6, 2010 Wash. App. LEXIS 121, at *16-17.[9] The court further held that B.A.'s statements to Jensen and Detective Buster were nontestimonial under *Shafer*, 156 Wn.2d 381, and *State v. Hopkins*, 137 Wn. App. 441, 154 P.3d 250 (2007). *Beadle*, 2010 WL 282405, at *7, 2010 Wash. App. LEXIS 121, at *17-18. Alternatively, it held that any error in admitting this testimony would be harmless. *Id.* Finally, the court held that the trial court abused its discretion in admitting evidence of B.A.'s behavior at the courthouse, but it found that the error was harmless. *Id.* at *8, 2010 Wash. App. LEXIS 121, at *18-19.

---

[9] Judge Hunt argued in dissent that *Smith* required the State to make an affirmative showing that B.A. would be unable to testify via alternative means, such as closed-circuit television, and that the State had failed to make such a showing. *Beadle*, 2010 WL 282405, at *8, 2010 Wash. App. LEXIS 121, at *29-30 (Hunt, J., dissenting).

## ANALYSIS

### I. Admission of B.A.'s Hearsay Statements

A. Testimonial Hearsay

¶21 Beadle claims that B.A.'s hearsay statements to Ms. Jensen and Detective Buster were testimonial, and the trial court erred in admitting these statements.

¶22 In *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court held that admission of testimonial hearsay statements of a witness who does not appear at a criminal trial violates the confrontation clause of the Sixth Amendment unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity for cross examination. The *Crawford* Court left "for another day any effort to spell out a comprehensive definition of 'testimonial,'" 541 U.S. at 68. However, it noted that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51.

¶23 In dicta, the Court listed three "formulations of this core class of 'testimonial' statements," including " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Id.* at 51-52 (quoting Br. for Nat'l Ass'n of Criminal Defense Lawyers et al. as *Amici Curiae* at 3). The Court also noted that "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *Id.* at 52.

¶24 Following *Crawford*, in *Shafer*, this court announced a declarant-centric standard for determining whether an out-of-court statement made to a nongovernmental witness is testimonial.

The proper test to be applied in determining whether the declarant intended to bear testimony against the accused is

whether a reasonable person in the declarant's position would anticipate his or her statement being used against the accused in investigating and prosecuting the alleged crime. This inquiry focuses on the declarant's intent by evaluating the specific circumstances in which the out-of-court statement was made. Applying this standard, it defies logic to think that T.C., as a three-year-old child, or any reasonable three-year-old child, would have an expectation that her statements about alleged sexual abuse could be used for prosecutorial purposes.

*Shafer*, 156 Wn.2d at 390 n.8 (citation omitted). Applying this standard, the trial court in this case held that B.A.'s statements to Jensen and Detective Buster were nontestimonial in light of B.A.'s tender age. CP at 43.

¶25 Months after this court issued the *Shafer* opinion, the United States Supreme Court again discussed testimonial hearsay, explaining that, within the context of police interrogations, whether statements are "testimonial" is determined by the primary purpose of the interrogation.

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). The Court noted that the primary purpose test was specific to the police interrogation context. *Id.* at 823 n.2.

¶26 In *State v. Ohlson*, 162 Wn.2d 1, 168 P.3d 1273 (2007), we adopted the "primary purpose" test announced in *Davis* and identified four factors to determine whether an out-of-court statement is testimonial under *Davis*: "(1) the timing relative to the events discussed, (2) the threat of harm posed by the situation, (3) the need for information to resolve a present emergency, and (4) the formality of the interrogation." *Id.* at 12.

¶27 In so holding, we declined to import the declarant-centric standard announced in *Shafer* to the police interrogation context, noting that "[t]he *Davis* primary purpose test is not focused on the reasonable belief of an objective declarant, as was one definition of 'testimonial' endorsed in *Crawford*." *Id.* at 11; *see Shafer*, 156 Wn.2d at 390 n.8; *see also State v. Koslowski*, 166 Wn.2d 409, 430 n.13, 209 P.3d 479 (2009) ("The four-factor inquiry as well as the rest of the analysis in *Davis* does not turn on the purpose and understanding of the victim/witness whose statements are at issue, and whatever else might be said of *Crawford*, the formulations of possible approaches to what constitute 'testimonial statements' appearing in it do not take precedence over *Davis*.").

¶28 In *Michigan v. Bryant*, ___ U.S. ___, 131 S. Ct. 1143, 1156, 179 L. Ed. 2d 93 (2011), decided shortly after oral argument in this case, the United States Supreme Court further clarified that in deciding whether the primary purpose of the interrogation is to meet an ongoing emergency, the court objectively evaluates the circumstances of the encounter and the statements and actions of the parties to the encounter. As part of this inquiry, the court also considers the level of formality surrounding the statement. 131 S. Ct. at 1160.

¶29 Based on the evolution of the law since *Shafer*, we conclude that the *Shafer* standard does not apply to statements made to law enforcement.

¶30 In this case B.A.'s out-of-court statements to Jensen and Detective Buster were made in the course of a police interrogation. Although Jensen was not a law enforcement officer, she was present only to assist the police department—not to protect B.A.'s welfare in her capacity as a CPS employee.[10] Accordingly, we consider the primary

---

[10] In *State v. Hopkins*, 137 Wn. App. 441, 154 P.3d 250 (2007), the Court of Appeals addressed whether a child's statement to a CPS worker was testimonial for confrontation clause purposes. The court held that the child's initial statements to the CPS worker were nontestimonial because the CPS worker "was not

purpose of the interrogation to determine whether B.A.'s statements were testimonial. *Davis*, 547 U.S. at 822.

¶31 At the time of these disclosures, the immediate danger to B.A. had passed; B.A.'s interview with Jensen and Detective Buster took place in February 2007, whereas Beadle had no access to B.A. after January 2006. *See Ohlson*, 162 Wn.2d at 12. Although the interview was tailored to a child, it had a degree of formality and was unlike a conversation with a casual acquaintance. *Id.* Unlike the interrogation in *Bryant*, the interview in this case took place in a neutral location—not in the field at the scene of a potential crime. *See Bryant*, 131 S. Ct. at 1150.

¶32 On these facts, we conclude that the primary purpose of this interview was to "establish or prove past events potentially relevant to later criminal prosecution," rather than to respond to an "ongoing emergency." *Davis*, 547 U.S. at 822; *see Bryant*, 131 S. Ct. at 1156. Thus, we hold the trial court erred in concluding that B.A.'s disclosures to Jensen and Detective Buster were nontestimonial. *Cf. State v. Justus*, 205 S.W.3d 872 (Mo. 2006) (holding that child victim's statements during forensic interview were testimonial under primary purpose test); *State v. Arnold*, 126 Ohio St. 3d 290, 2010-Ohio-2742, 933 N.E.2d 775 (same).

¶33 As noted, testimonial statements may not be introduced against a criminal defendant unless the declarant is unavailable to testify at trial and the defendant had a

---

working at the behest of law enforcement" but rather "was working on behalf of [the child's] welfare" at the time. *Id.* at 456. In contrast, the court held that the child's later statements to the CPS worker were testimonial under *Davis* because the statements were made during a CPS investigation that took place after the immediate danger to the child had passed, and the statements had the potential to (and indeed did) result in criminal prosecution. *Id.* at 456-58. B.A.'s statements are more akin to the second set of statements in *Hopkins*. *Cf. In re T.T.*, 384 Ill. App. 3d 147, 161, 892 N.E.2d 1163, 323 Ill. Dec. 171 (2008) (statements made to Department of Children and Family Services investigator working "at the behest of and in tandem with the State's Attorney with the intent and purpose of assisting in the prosecutorial effort" are testimonial); *State v. Snowden*, 385 Md. 64, 86, 867 A.2d 314 (2005) (Department of Health and Human Services investigator "performing her responsibilities in response and at the behest of law enforcement [was] for Confrontation Clause analysis, an agent of the police department").

prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53-54. Beadle did not have the opportunity to cross-examine B.A. Accordingly, we hold that the admission of B.A.'s statements to Jensen and Detective Buster was error.

## B. Nontestimonial Hearsay

¶34 We engage in a different analysis to determine whether the trial court properly admitted B.A.'s nontestimonial hearsay statements. Beadle does not challenge the trial court's conclusion that B.A.'s statements to Burgess, Damon, Heriot, and McAdams were nontestimonial. Nontestimonial statements do not implicate the confrontation clause. *Id.* at 68. Instead, the admissibility of these statements turns solely on whether B.A. was available to testify under RCW 9A.44.120.

¶35 Citing both RCW 9A.44.120 and the confrontation clauses of the state and federal constitutions, Beadle contends that the trial court erred in finding B.A. unavailable to testify. Specifically, he claims that the trial court erred in concluding that B.A. would be unable to testify via closed-circuit television or another alternative means. Suppl. Br. of Pet'r at 2.

¶36 RCW 9A.44.120 governs the admissibility of child hearsay.[11] In order to admit a hearsay statement

---

[11] RCW 9A.44.120 provides in pertinent part:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another, or describing any act of physical abuse of the child by another that results in substantial bodily harm as defined by RCW 9A.04.110, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

made by a child under the age of 10 related to sexual contact, the court must find that the statement is reliable. If so, the statement may be admitted if the child testifies at trial or the child is "unavailable as a witness," and there is "corroborative evidence of the act." RCW 9A.44.120(2)(b). Because B.A. did not testify at trial, we must determine whether the trial court erred in finding that B.A. was unavailable.

¶37 We review a trial court's admission of child hearsay statements for abuse of discretion. *State v. Borboa*, 157 Wn.2d 108, 121, 135 P.3d 469 (2006). "A trial court abuses its discretion 'only when its decision is manifestly unreasonable or is based on untenable reasons or grounds.'" *Id.* (quoting *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003)).

¶38 As Beadle recognizes, RCW 9A.44.120 does not define the term "unavailable." Instead, Beadle argues that cases discussing the test for "unavailability" under the statute require that courts apply the constitutional "unavailability" test to all child hearsay statements.

¶39 Prior to the Supreme Court's decision in *Crawford*, determining whether a child witness was unavailable did not require courts to distinguish between testimonial and nontestimonial hearsay. Instead, under the test outlined in *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), *overruled by Crawford*, 541 U.S. 36, *all* hearsay statements admitted under RCW 9A.44.120 were evaluated under the confrontation clause to determine whether the statements were reliable. After *Crawford*, however, only testimonial statements implicate the constitutional protections of the confrontation clause.

¶40 The burden of proving unavailability for constitutional purposes lies with the proponent of the child hearsay statement. *Smith*, 148 Wn.2d at 132 (citing *Roberts*, 448

(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

U.S. at 66). Under the constitutional standard, unavailability requires a "good faith effort" to secure the presence of the witness at trial. Suppl. Br. of Resp't at 10 (recognizing constitutional standard for unavailability); *State v. Ryan*, 103 Wn.2d 165, 171, 691 P.2d 197 (1984) (citing *Roberts*, 448 U.S. at 74, *overruled on other grounds by Crawford*, 541 U.S. 36).[12] "[T]he lengths to which the prosecution must go to produce the witness is 'a question of reasonableness.' " *Smith*, 148 Wn.2d at 133 (internal quotation marks omitted) (quoting *Roberts*, 448 U.S. at 74). In particular, the "good faith" standard does not require the State to undertake a "futile act" to satisfy the confrontation clause. *Ryan*, 103 Wn.2d at 172 (citing *Roberts*, 448 U.S. at 74). However, if the State makes no effort whatsoever to produce the witness, the State cannot rely on the mere possibility that the witness would resist such efforts. *Barber v. Page*, 390 U.S. 719, 724, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968) (" '[T]he possibility of a refusal is not the equivalent of asking and receiving a rebuff.' " (quoting *Barber v. Page*, 381 F.2d 479, 481 (10th Cir. 1966) (Aldrich, J., dissenting))).

¶41 Without distinguishing between B.A.'s testimonial and nontestimonial hearsay statements, Beadle argues that the State has failed to prove that it made a "good faith effort" to secure B.A.'s testimony via closed circuit television or otherwise. Suppl. Br. of Pet'r at 4-6. He contends that the trial court erred in concluding that B.A. would be unable to testify via closed circuit television and in finding B.A. unavailable without fully exploring this alternative.

¶42 In support of his contention, Beadle relies heavily on *Smith*, a decision predating *Crawford*. *Smith* involved a constitutional challenge to a trial court's finding of unavail-

---

[12] Although *Crawford* overruled *Roberts* in large part, *Roberts* remains good law with respect to unavailability. Richard D. Friedman, *Adjusting to* Crawford: *High Court Decision Restores Confrontation Clause Protection*, 19 CRIM. JUST. 4, 8 (2004) ("[I]n applying the unavailability requirement to prior testimony under the *Roberts* regime, the Court developed a body of case law concerning when the prosecution has adequately proven unavailability, and for better or worse that case law, including part of *Roberts* itself, is left untouched.").

ability. 148 Wn.2d at 126. There, a child witness took the stand at a pretrial hearing to determine the admissibility of her hearsay statements, but when she saw the defendant in the courtroom, she "became scared, began to cry and immediately 'clammed up.' " *Id.* at 126 (quoting report of proceedings). The defendant argued that if the child did not testify in open court, he was entitled to confront the witness via closed-circuit television. *Id.* at 126-27.

¶43 The child's social worker opined that the child would be able to testify, but that this " 'testimony would be best obtained' " via alternative means. *Id.* at 127 (quoting report of proceedings). She testified that possibilities for taking the child's testimony in an alternative setting " 'might be worth exploring further.' " *Id.* The child's therapist testified in turn that the child would be unable to testify in the defendant's presence and probably unable to testify via closed-circuit television. *Id.* at 128. The court found the child witness unavailable, citing the child's behavior in the courtroom and noting that the courtroom lacked the equipment for closed-circuit television. *Id.*

¶44 On appeal, Smith argued that the confrontation clauses of the state and federal constitutions required the court to find the child unavailable to testify via closed-circuit television before finding her unavailable as a witness. *Id.* at 129. This court agreed, confining the holding to the narrow circumstances at issue.

> In determining whether a witness is unavailable, under the good faith requirement, a court should consider what options are available to the State in securing the child victim's testimony. This would include the use of RCW 9A.44.150 *where there is evidence that the child victim may be able to testify by alternative means.*

*Id.* at 136 (emphasis added).

¶45 Initially, Beadle's reliance on *Smith* is misplaced because *Smith* is concerned only with the "good faith" standard—the standard for unavailability under the con-

frontation clause. However, we are concerned only with B.A.'s nontestimonial statements, which do not implicate the confrontation clause.

¶46 As the State correctly points out, there is a critical distinction between unavailability for confrontation clause purposes and unavailability for evidentiary purposes. Suppl. Br. of Resp't at 9-10 (" 'Unavailability for purposes of [this] hearsay statute is defined under ER 804(a)' . . . . Unavailability in the constitutional sense additionally requires the prosecutor to make a good faith effort to obtain the witness's presence at trial." (quoting *State v. Hirschfield*, 99 Wn. App. 1, 4, 987 P.2d 99 (1999) (citing *Ryan*, 103 Wn.2d at 171))). *See State v. Hacheney*, 160 Wn.2d 503, 522 n.8, 158 P.3d 1152 (2007) (noting distinction between unavailability for confrontation clause purposes and unavailability for evidentiary purposes); *State v. Price*, 158 Wn.2d 630, 639 n.5, 146 P.3d 1183 (2006) ("Both the United States Supreme Court and this court have drawn a distinction between unavailability for confrontation clause purposes, and unavailability for hearsay purposes.").

¶47 Whereas all hearsay statements admitted under RCW 9A.44.120 are subject to the evidentiary standard for unavailability, only testimonial statements are subject to the constitutional requirements for unavailability. Thus, cases such as *Smith*, which apply the constitutional standard for "unavailability" under the *Roberts* standard are inapposite after *Crawford*.[13] Instead, unavailability for purposes of nontestimonial child hearsay statements are properly evaluated under ER 804(a).

¶48 However, even if Beadle is correct that all of B.A.'s hearsay statements, both testimonial and nontestimonial statements, are subject to the constitutional stan-

---

[13] The distinction between the statutory and constitutional standards for unavailability did not arise from *Crawford*; it predated *Crawford*. However, this distinction has become important in the context of the confrontation clause because now only testimonial statements are subject to the constitutional requirements.

dard of "unavailability," the record here demonstrates that the State made "reasonable" efforts to produce B.A. under the reasoning in *Smith*. Specifically, the State proposed alternative means for B.A. to testify; it requested that B.A. be allowed to testify with her mother present or, alternatively, to whisper her responses to a victim advocate who would relay them to the court.

¶49 Despite its efforts, the State was unable to coax B.A. into the courtroom or to agree to testify through either of these alternative means. It is difficult to imagine what more the State could have done to produce B.A. as a witness, short of dragging her, kicking and screaming, into the courtroom. B.A.'s dramatic meltdown on the first day of the child hearsay hearing, coupled with her psychiatric diagnoses of PTSD, provides ample evidence from which a court reasonably could infer that B.A. would remain unwilling and unable to testify in open court or even via alternative means, such as closed-circuit television. The law requires only "reasonable," efforts—not "futile acts." *See Roberts*, 448 U.S. at 74; *Ryan*, 103 Wn.2d at 172.

¶50 By its terms, *Smith*, 148 Wn.2d at 137, is limited to circumstances in which affirmative evidence suggests that a child may be able to testify via alternative means. There, a social worker explicitly stated that the child may have been able to testify under different circumstances. *Id.* at 127. Here, B.A.'s behavior suggests an unwillingness to testify under *any* circumstances. No affirmative evidence indicated otherwise. Notably, at the time of trial, even Beadle did not take issue with the trial court's conclusion that B.A. was unavailable. It is true, as Beadle notes, that B.A. was apparently willing to come into the courtroom on one occasion, a willingness to enter a courtroom is a far cry from a willingness to testify at trial, in open court or otherwise. Moreover, the State attempted to call B.A. on the second day of the child hearsay hearings, after she had expressed this willingness to come into the courtroom, and again, B.A. refused to enter the courtroom or to testify.

¶51 As the Court of Appeals noted, the trial court in *Smith* dismissed out-of-hand the possibility of using closed-circuit television, citing inadequate facilities for such an arrangement. *Beadle*, 2010 WL 282405, at *6, 2010 Wash. App. LEXIS 121, at *15-17; *see Smith*, 148 Wn.2d at 128. Here, the court explicitly considered the use of closed-circuit television and rejected this possibility based on B.A.'s behavior. CP at 42 ("The evidence does not suggest that [B.A.] may be able to testify by the use of closed-circuit television pursuant to RCW 9A.44.150.").

¶52 On this record we hold that the State met its burden to show B.A. was "unavailable" under the constitutional good faith standard.

¶53 Turning to the evidentiary standard for unavailability, we also conclude that B.A. was unavailable under ER 804(a).

¶54 Unavailability is defined under ER 804(a). *Hirschfield*, 99 Wn. App. at 4 (citing *Ryan*, 103 Wn.2d at 171); Suppl. Br. of Resp't at 9 (recognizing statutory standard for unavailability). Under ER 804(a), a witness is unavailable if she:

(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) Testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) Is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subsection (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means.

In addition, under ER 804(a)(6),

> [a] declarant is not unavailable as a witness if the exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.[14]

¶55 Applying the evidentiary standard under ER 804, we hold that the trial court did not abuse its discretion in finding B.A. unavailable to testify under the statutory standard for unavailability. B.A. was diagnosed with sexual abuse of a child and PTSD and thus fell squarely within the purview of ER 804(a)(4), under which a witness is unavailable for hearsay purposes if she "[i]s unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity."

¶56 In ruling on the admissibility of B.A.'s hearsay statements, the court relied in part on B.A.'s diagnoses of PTSD and sexual abuse of a child. CP at 42, ¶1.8 (listing B.A.'s psychiatric diagnoses as a finding of fact); *see also* 2 JOHN E.B. MYERS, EVIDENCE IN CHILD ABUSE AND NEGLECT CASES § 7.55 (3d ed. 1997) (trauma associated with testifying in court may be grounds for finding a child witness unavailable to testify); *In re Tayler F.*, 296 Conn. 524, 544, 995 A.2d

---

[14] The State urges us to look beyond ER 804(a) and adopt a broader definition of unavailability for child hearsay purposes. Suppl. Br. of Resp't at 9-10 ("But 'there are unique problems associated with the in-court testimony of child victims that suggest a number of possible meanings for unavailability.' Accordingly, a child may be rendered 'unavailable' because she is so emotionally distraught she becomes unresponsive or refuses to testify" (citing *People v. Rocha*, 191 Ill. App. 3d 529, 547 N.E.2d 1335, 1339-42, 138 Ill. Dec. 714 (1989))); *see also* LAWS OF 1990, ch. 150, § 1 ("In rare cases, the child [victim] is so traumatized that the child is unable to testify at trial and is unavailable as a witness or the child's ability to communicate in front of the jury or defendant is so reduced that the truth-seeking function of trial is impaired."). However, ER 804(a)(4), which provides that a witness may be unavailable due to "mental illness or infirmity" is sufficiently broad to encompass the "emotionally distraught" child witness who is unresponsive or unwilling to testify. Similarly, a court reasonably could find such a child unavailable under ER 804(a)(2). *See Hirschfield*, 99 Wn. App. at 5 (finding child witness unavailable under ER 804(a)(2) where child refused to testify when asked to do so, even though court had not issued formal order requiring child to testify). Finally, where a child witness is "emotionally distraught" because of the defendant's wrongdoing, the witness may be unavailable under ER 804(a)(6).

611 (2010) ("a trial court properly may conclude that a child is unavailable if there is competent evidence that the child will suffer psychological harm from testifying"); *Rangel v. State*, 199 S.W.3d 523, 531 (Tex. Ct. App. 2006) (upholding trial court's finding that child was unavailable where various witnesses opined that testifying would traumatize child); *In re T.T.*, 384 Ill. App. 3d 147, 156, 892 N.E.2d 1163, 323 Ill. Dec. 171 (2008) ("Child sexual abuse cases present special problems where the child victim may be unable to testify adequately due to fear, guilt, or intimidation. Child witnesses are considered unavailable if it is demonstrated to the trial court that the children were unwilling or unable to testify because of fear.").[15]

¶57 We hold that the trial court's admission of B.A.'s disclosures to her family members and therapists was proper.

## C. Harmless Error

 ¶58 As noted, the trial court erred in admitting B.A.'s testimonial statements to Jensen and Detective Buster because Beadle did not have a prior opportunity for cross examination. *See Crawford*, 541 U.S. at 53-54. However, as the State points out, confrontation clause violations are subject to harmless error analysis. *Koslowski*, 166 Wn.2d at 431. A constitutional error is harmless if "the untainted evidence is so overwhelming that it necessarily leads to a finding of the defendant's guilt." *Id.*

¶59 We hold that admission of B.A.'s testimonial hearsay statements to Jensen and Detective Buster was harmless in light of B.A.'s nontestimonial statements to Burgess, Damon, Heriot, and McAdams. In particular, B.A.'s disclosures to Jensen and Detective Buster were nearly identical

---

[15] *See also* ER 804(a)(6) ("A declarant is not unavailable as a witness if the exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying."). To the extent that B.A.'s psychological unavailability is attributable to Beadle's scare tactics, B.A. is unavailable under ER 804(a)(6).

to those introduced through the testimony of other witnesses, suggesting that the former had little, if any, independent value. Beadle's contention that B.A.'s statements to Jensen and Detective Buster were more incriminating than her other hearsay statements is not supported by the record.

¶60 Furthermore, the State's case did not rest solely on B.A.'s out-of-court accusations; the additional evidence of Beadle's guilt—from B.A.'s precocious sexual knowledge, to her hypersexual behavior, to her psychiatric diagnoses, to Beadle's extreme reaction at being confronted by B.A. and her mother—was overwhelming. Thus, we hold that the admission of B.A.'s testimonial hearsay statements to Jensen and Detective Buster was harmless error.

## II. Admission of Evidence of B.A.'s Breakdown

¶61 Beadle also argues that the trial court abused its discretion in admitting "unfairly prejudicial" evidence of B.A.'s emotional breakdown in the corner of the courthouse. Suppl. Br. of Pet'r at 16.

¶62 Only relevant evidence is admissible at trial. ER 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403. "When evidence is likely to stimulate an emotional response rather than a rational decision, a danger of unfair prejudice exists." *State v. Powell*, 126 Wn.2d 244, 264, 893 P.2d 615 (1995); *accord City of Auburn v. Hedlund*, 165 Wn.2d 645, 654, 201 P.3d 315 (2009). "Nonconstitutional error requires reversal only if, within reasonable probabili-

ties, it materially affected the outcome of the trial." *State v. Russell*, 125 Wn.2d 24, 94, 882 P.2d 747 (1994).

¶63 *Cunningham v. State*, 801 So. 2d 244 (Fla. Ct. App. 2001), a case on which Beadle heavily relies, presents a similar fact pattern to the one here. There, a child victim took the stand at a pretrial child hearsay hearing, but when asked about the defendant, who was on trial for sexually abusing her, she had an emotional breakdown and was unable to continue testifying. *Id.* at 245. At trial, the State called a psychologist to testify to the child's breakdown at the pretrial hearing in order to explain to the jury why the child was unavailable as a witness. *Id.* at 246. The psychologist described the child's breakdown in vivid detail. She further testified that while children who fabricate often "shut down" in court, the child victim's behavior was unlike that of a child who is fabricating. *Id.* On appeal, the defendant argued that the admission of this testimony was irrelevant and extremely prejudicial. *Id.* The court agreed. *Id.* In particular, it held that the emotional trauma that rendered the child unavailable was irrelevant to the determination of the defendant's guilt, except insofar as it went to credibility and thus amounted to improper bolstering. *Id.* at 246-47. The court further held that the challenged testimony was unduly prejudicial in that it allowed the jury to infer that "her emotional 'unavailability' was the result of being required to testify about events that were traumatic in her life in front of a person whom she is still extremely fearful [sic] and who was responsible for the trauma." *Id.* at 247-48.

¶64 Here, the prosecution's stated purpose in introducing this evidence was to explain to the jury why B.A. was unavailable. However, the unavailability of a witness is a preliminary fact reserved for the court and has no bearing on a defendant's culpability. To the extent that B.A.'s meltdown gave credence to the State's allegations, this testimony amounted to impermissible bolstering. *Cf. Cunningham*, 801 So. 2d at 246-47. In sum, this evidence was more prejudicial

than probative, if probative at all. *See* ER 403, 401. The trial court erred in admitting this evidence.

¶65 The final question is whether this error was harmless. We believe it was in light of the remaining properly admitted evidence that was similar, including testimony as to B.A.'s psychiatric diagnoses and her behavior in therapy, her reluctance to discuss the alleged abuse, and her apparent fear of repercussions, due in part to Beadle's tirade and scare tactics. In sum, the challenged testimony only confirmed what the jury already knew about B.A.'s mental state. This error is unlikely to have affected the outcome of Beadle's trial and was, therefore, harmless. *See Russell*, 125 Wn.2d at 94.

## CONCLUSION

¶66 We conclude that B.A.'s statements to Jensen and Detective Buster were testimonial but that the introduction of these statements was harmless in light of B.A.'s disclosures to other individuals. We further hold that the admission of B.A.'s nontestimonial statements was proper because B.A. was unavailable within the meaning of RCW 9A.44.120. Finally, we conclude that the trial court erred in admitting evidence of B.A.'s meltdown at the courthouse but that this error was harmless in light of other evidence of B.A.'s psychological state. We affirm the Court of Appeals.

C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.