132 P.3d 743 (2006)
STATE of Washington, Respondent,
v.
Reginald SAUNDERS, Appellant.
No. 53366-5-I.
Court of Appeals of Washington, Division 1.
March 27, 2006.
Publication Ordered April 24, 2006.
Reconsideration Denied May 18, 2006.
*745 Reginald Saunders (Appearing Pro Se), Burien, WA, Elaine L. Winters, Washington Appellate Project, Seattle, WA, for Appellant.
Prosecuting Atty King County, King Co. Pros/App Unit Supervisor, David M. Seaver, King Co. Pros. Office, Seattle, WA, for Respondent.
BECKER, J.
¶ 1 Reginald Saunders appeals his judgment and sentence for assault in the third degree, domestic violence, and malicious mischief in the third degree, domestic violence. He contends that the assault statute is unconstitutionally vague and that there was insufficient evidence to convict him of assault. Saunders also claims that his Sixth Amendment right was violated by the admission of the nontestifying victim's 911 call, and testimony regarding the victim's statements to a police officer, a paramedic, and an emergency room physician. He also argues that the court erred in admitting the victim's statements to the paramedic and physician under ER 803(a)(4), that the Washington State Constitution provides greater protections than the federal Constitution, and that the trial court erred in imposing statutorily impermissible sentencing and restitution orders. We affirm Saunders' conviction, vacate his malicious mischief sentence and remand *746 for resentencing, and vacate his restitution order.

FACTS
¶ 2 On the morning of September 16, 2002, Mikele Hieronymus called 911 from her home. Audibly distressed and crying, she told the operator that her boyfriend, Reginald Saunders, had just punched her, grabbed her by her throat, and broken her cell phone by throwing it against a wall. She complained of neck pain and accepted the operator's offer of medical aid.
¶ 3 Saunders was charged by amended information with one count of assault in the third degree, domestic violence, and one count of malicious mischief in the third degree, domestic violence.
¶ 4 At trial, Deputy Keith Potter testified that he arrived at Hieronymus' home and found her crying, nervous, and frightened. Deputy Potter saw fresh red marks in the shape of a hand print on Hieronymus' neck and swelling around her eye. He said that Hieronymus "wasn't voluntarily giving up the story" but he "was still able to extract information from her."[1] Hieronymus told him that she and Saunders argued that morning and that he grabbed her by her hair and throat, threw her against the wall, hit her right eye, choked her to the point where she felt dizzy, and broke her cell phone.
¶ 5 Paramedic Allen Keyes testified that he also responded to Hieronymus' 911 call. She told Keyes that she had neck pain, and he noticed red marks, possibly from hand pressure, on the side of her neck. While Keyes treated Hieronymus, he saw that she was crying and appeared scared. Hieronymus told Keyes that she got into an argument with her boyfriend and he grabbed her by the hair, grabbed her by the throat and choked her, and threw her against a wall.
¶ 6 Emergency room physician James Andrews also testified. He said he asked Hieronymus about her injuries and their cause and then gave her a complete physical examination. Hieronymus told him that her boyfriend grabbed her by the throat at about 6 a.m., and that he often touched her face to get her attention when he was talking. The doctor noted abrasions on the left side of Hieronymus' neck, tenderness about her larynx, low-grade puffiness of her left cheek, and a faint abrasion on the left side of her forehead. He testified that she had difficulty flexing her neck due to pain that was consistent with having been grabbed by the throat, and he prescribed a painkiller.
¶ 7 Saunders testified in his own defense. He denied ever assaulting Hieronymus, but said that he may have held her by her face when they had an argument on the morning in question. Saunders testified that Hieronymus had arrived home at 2:30 a.m., intoxicated and combative. He admitted throwing her cell phone at her, causing it to come apart, and claimed that he left their home at approximately 3:30 a.m.
¶ 8 A jury convicted Saunders as charged and he received a standard range sentence for third degree assault and a 12-month suspended sentence for malicious mischief in the third degree. Without notice to defense counsel, the court later ordered Saunders to pay $333.09 restitution to the Crime Victims Compensation Fund.

DISCUSSION

I. Statutory Vagueness
¶ 9 Saunders argues that Washington's third degree assault statute, RCW 9A.36.031(1)(f), is void for vagueness. RCW 9A.36.031 prohibits the negligent causation of "bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering." "Bodily harm" is defined in RCW 9A.04.110(4)(a) as "physical pain or injury, illness, or an impairment of physical condition," however, "substantial pain" and "considerable suffering" are not defined in the criminal code.
¶ 10 Saunders contends that the terms "substantial pain" and "considerable suffering," as used in RCW 9A.36.031, are unconstitutionally vague. He argues that an average citizen or law enforcement official may improperly conclude, upon reading those *747 terms in the statute, that it proscribes not only the negligent infliction of persistent physical pain, but also proscribes the infliction of ongoing emotional pain.
¶ 11 The due process vagueness doctrine seeks to ensure that the public has adequate notice of what conduct is proscribed and to ensure that the public is protected from arbitrary ad hoc enforcement. State v. Riles, 135 Wash.2d 326, 348, 957 P.2d 655 (1998). The vagueness doctrine is violated if the provision (1) fails to define the criminal offense so that ordinary people can understand what conduct is proscribed, and (2) fails to provide ascertainable standards of guilt to prevent arbitrary enforcement. City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990). The party challenging the prohibition carries the burden of overcoming the presumption that the limitation is constitutional. Douglass, 115 Wash.2d at 177, 795 P.2d 693. Challenges under the due process vagueness doctrine which do not involve First Amendment rights are evaluated under the facts of each case. State v. Lee, 135 Wash.2d 369, 393, 957 P.2d 741 (1998).
¶ 12 The terms "substantial pain" and "considerable suffering" as used in RCW 9A.36.031(f) qualify the term "bodily harm," which is defined as a matter of physical sensation. The statute proscribes the infliction of bodily harm, not the infliction of emotional pain. The statute is not void for vagueness because it provides adequate notice of the proscribed conduct and possesses ascertainable standards to prevent arbitrary enforcement.
¶ 13 Furthermore, Saunders' argument that the jury was allowed to convict him if it concluded that he caused Hieronymus to suffer persistent emotional suffering fails because there was no evidence offered at trial that would suggest that Hieronymus suffered long-lasting emotional trauma, nor was there any suggestion that the statute's reference to "considerable suffering" modifies "bodily harm" to include emotional suffering.

II. Sufficiency of the Evidence
¶ 14 Saunders also contends that there was insufficient evidence to allow a jury to conclude that Hieronymus suffered substantial pain and considerable suffering. We review a challenge to the sufficiency of the evidence by considering the evidence in the light most favorable to the State, affording it all reasonable inferences, and asking whether any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. State v. Goodman, 150 Wash.2d 774, 781, 83 P.3d 410 (2004). Direct evidence and circumstantial evidence are considered equally reliable. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980).
¶ 15 Saunders argues that the standard we should use to measure whether injuries are severe enough to warrant a conviction under RCW 9A.36.03 comes from this court's opinion in State v. Robertson, 88 Wash.App. 836, 947 P.2d 765 (1997). Although Robertson provides guidance on this issue, it does not purport to set limits on what types of injuries are sufficient to sustain a conviction.
¶ 16 Here, a rational trier of fact could conclude that Saunders caused Hieronymus substantial pain and considerable suffering because there was evidence that she complained of neck pain lasting for more than three hours, and that she had swelling on her cheek and an abrasion on her forehead, all of which was consistent with her claim that Saunders threw her against a wall and choked her.

III. Sixth Amendment Challenges
¶ 17 Saunders next argues that the trial court violated his Sixth Amendment right to confront his accuser when it admitted Hieronymus' out-of-court statements through her 911 recording and testimony from Deputy Potter, paramedic Keyes, and Dr. Andrews.
¶ 18 The Sixth Amendment confrontation clause guarantees that a person accused of a crime "shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. Until 2004, the confrontation clause did not prohibit admission of out-of-court statements if the statement had adequate indicia of reliability, which could be inferred if the statement fell within a firmly rooted hearsay exception. State v. Thomas, 150 Wash.2d 821, 855-56, 83 P.3d *748 970 (2004) (citing Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). However, in Crawford v. Washington[2], the Supreme Court overruled Roberts, stating that "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." Crawford, 541 U.S. at 62, 124 S.Ct. 1354. For purposes of Sixth Amendment analysis, the Court classified out-of-court statements as either testimonial or nontestimonial. Nontestimonial statements do not implicate the confrontation clause and are admissible if they fall within a hearsay exception. Testimonial statements do implicate the confrontation clause, and are admissible only if the witness testifies at trial, or is unavailable and the defendant has had a prior opportunity to cross-examine. Crawford, 541 U.S. at 59, 124 S.Ct. 1354.
¶ 19 The Crawford Court declined to provide a definition of "testimonial statement." Instead, the Court enumerated "various formulations" of a "core class" of testimonial statements: "ex parte in-court testimony or its functional equivalent . . . or similar pretrial statements the declarant would reasonably expect to be used prosecutorially . . . ; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and finally, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 52, 124 S.Ct. 1354. Statements made during interrogations by law enforcement officers fall squarely within the classification of testimonial statements. Crawford, 541 U.S. at 53, 124 S.Ct. 1354. The Court also gave examples of nontestimonial statements, including "off-hand, overheard" remarks, or "a casual remark to an acquaintance." Crawford, 541 U.S. at 51, 124 S.Ct. 1354.
¶ 20 In State v. Davis, 154 Wash.2d 291, 111 P.3d 844 (2005), our State Supreme Court addressed the admissibility of excited utterance evidence after Crawford. Davis involved statements made by a 911 caller. The State argued that all statements to 911 dispatch should be admissible because the caller seeks aid, not prosecution. The Davis Court rejected the State's argument and held that whether statements made in 911 calls are testimonial must be evaluated on a case-by-case basis. Davis, 154 Wash.2d at 295, 111 P.3d 844.

A. The 911 Call
¶ 21 A recording of Hieronymus' 911 call was admitted as an excited utterance under ER 803(a)(2). During the call, she was crying and audibly distressed and told the operator that her boyfriend grabbed her by the throat, threw her against a wall, and broke her cell phone. Hieronymus also expressed fear that Saunders would return to their home. We classify this as a call for help and for protection from Saunders, not as a statement in aid of future prosecution. Accordingly, we conclude that Hieronymus' statements to the 911 operator were not testimonial and were properly admitted at trial.

B. Testimony of Paramedic and Emergency Room Physician
¶ 22 We also reject Saunders' claim that the trial court violated his Sixth Amendment right when it allowed paramedic Keyes and emergency room physician Andrews to testify about statements that Hieronymus made to them in the course of receiving medical care. The trial court found that Hieronymus' statements were admissible under ER 803(a)(4), which creates an exception to the hearsay bar for out-of-court statements made for purposes of medical diagnosis and treatment. Saunders does not contest the trial court's ruling that the statements qualify under ER 803(a)(4). Instead, he asserts that the statements are nevertheless "testimonial," and that their admission violated his constitutional right to confront adverse witnesses.
*749 ¶ 23 Typically, the purpose of giving a statement to a provider of medical diagnosis or treatment is to obtain appropriate care. Here, there is no reason to believe that a reasonable person in Hieronymus' position would think she was making a record of evidence for a future prosecution when she told paramedic Keyes and Dr. Andrews that her injuries occurred as a result of her boyfriend choking her and throwing her against the wall. The responsibilities of these two medical professionals bear no similarity to those of the government officials, historic and contemporary, whose activities are at the core of Crawford's holding. Saunders' Sixth Amendment right was not violated by the admission of their testimony.

C. Testimony of Police Officer
¶ 24 After Crawford, Hieronymus' oral statements to Deputy Potter would likely be deemed testimonial and therefore inadmissible. The statements were made during a structured police interview, which, for purposes of the Sixth Amendment, constitutes an interrogation as it was conducted to gather evidence to initiate police action or for use in a criminal prosecution. Deputy Potter described Hieronymus as close to hysterical, but said, "I was still able to extract information from her." She did not relay information to him spontaneously or voluntarily. Nonetheless, we need not decide whether Deputy Potter's testimony regarding Hieronymus' statements was admissible because, even if it was error to admit them, the error was harmless beyond a reasonable doubt.
¶ 25 Confrontation clause violations are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); Davis, 154 Wash.2d at 305, 111 P.3d 844. The correct inquiry is whether, assuming that the damaging potential of the testimony was fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431. Factors bearing on this inquiry include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and. . . the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 686-87, 106 S.Ct. 1431.
¶ 26 Deputy Potter's testimony regarding Hieronymus' description of the attack was entirely cumulative. Deputy Potter's testimony offered nothing of significance that the jury had not already heard through Keyes, and which it did not later hear through the playing of the 911 tape and the testimony of Dr. Andrews. Deputy Potter provided other insights into the eventsincluding the identification of photographs he'd taken of the injured victimbut, as to the victim's description of the assault, he presented no information that the jury had not already heard and would not later hear elsewhere at trial.
¶ 27 As to the malicious mischief charge, Deputy Potter presented photographs of a damaged phone, and Saunders admitted throwing Hieronymus' phone at her in anger, causing it to come apart. Saunders does not challenge the sufficiency of the evidence supporting the malicious mischief charge, attacking only the admission of Hieronymus' statement, through Deputy Potter, regarding the circumstances by which it was broken. Given that Saunders admitted to willfully damaging Hieronymus' phone, Deputy Potter's testimony was relatively unimportant. Reversal is not required.

IV. Confrontation Rights Under the Washington State Constitution
¶ 28 Saunders contends that the use of hearsay to convict him violated his right of confrontation under our state constitution, which provides: "In criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face". Wash. Const. art. I, § 22. This section requires independent analysis using the factors set forth in State v. Gunwall, 106 Wash.2d 54, 61-63, 720 P.2d 808 (1986); State v. Shafer, 156 Wash.2d 381, 128 P.3d 87 (2006). But it does not inflexibly require "an eyeball-to-eyeball confrontation between witnesses and the accused" in all circumstances. *750 State v. Foster, 135 Wash.2d 441, 473, 957 P.2d 712 (1998) (Alexander, J. concurring and dissenting). To date, no Washington case has established the contours of any difference between the right of confrontation as secured by this provision and the right of confrontation as secured by the Sixth Amendment.
¶ 29 The Gunwall analysis provided by Saunders does not help us to decide where those contours might lie. He contends the State constitution precludes a criminal defendant from being convicted based only upon hearsay declarations of a witness who does not testify at trial, unless the witness is found to be unavailable and there has been a prior opportunity for cross-examination. So interpreted, article I, § 22 would go farther than the Sixth Amendment as interpreted in Crawford, because even nontestimonial statements would be excluded. But Saunders has cited no state constitutional or common law history specifically indicating that such was the intent of the Framers.
¶ 30 The cases cited by Saunders do show that the Oregon Supreme Court, in interpreting a similar "face to face" provision in the state constitution, has demanded the unavailability of a declarant as a condition for admitting an excited utterance. State v. Campbell, 299 Or. 633, 705 P.2d 694 (1985); State v. Moore, 334 Or. 328, 49 P.3d 785 (2002). But as the State points out, other "face to face" states have concluded their constitutions provide protection identical to the Sixth Amendment. See, e.g., State v. Hester, 801 S.W.2d 695, 697 (Mo.1991); State v. Jacob, 242 Neb. 176, 494 N.W.2d 109, 119 (1993); State v. Burns, 112 Wis.2d 131, 332 N.W.2d 757, 763 (1983). So the example of Oregon is not, by itself, enough to support the conclusion that an independent analysis of the Washington provision would necessarily be identical to Oregon's.
¶ 31 Saunders also shows that the Washington Supreme Court, in an early case concerned with a defendant's constitutional right to meet witnesses against him face to face, insisted that trial courts be very cautious in considering the admissibility of a dying declaration. State v. Eddon, 8 Wash. 292, 36 P. 139 (1894). The court held in Eddon that it was error to instruct a jury to give a dying declaration the same weight as other sworn testimony; a dying declaration is entitled to no greater weight than would be given to sworn testimony "when no opportunity was given for a cross-examination." Eddon, 8 Wash. at 301, 36 P. 139. This case sheds no light on whether the early court would have excluded an excited utterance in a case where the witness was not shown to be unavailable.
¶ 32 Saunders' Gunwall analysis is inadequate to support a decision that article 1, § 22 requires the unavailability of a witness to be established before allowing the State to prove the crime with hearsay admitted as an excited utterance or under the exception for statements made for medical diagnosis. We decline to reach the issue.

V. Attributions of Fault Under ER 803(a)(4)
¶ 33 Saunders also claims that the trial court erred when it allowed paramedic Keyes and Dr. Andrews to testify regarding Hieronymus' statements to them that Saunders was her assailant. Saunders contends that attributions of fault are inadmissible under ER 803(a)(4). However, Saunders is barred from raising this issue on appeal because he failed to specifically object to the admission of this evidence at his trial. To preserve an alleged trial error for appellate review, the defendant must timely object to the introduction of the evidence or move to suppress it prior to or during trial. State v. Silvers, 70 Wash.2d 430, 432, 423 P.2d 539 (1967); State v. Davis, 141 Wash.2d 798, 850, 10 P.3d 977 (2000). Failure to specifically challenge the admissibility of proffered evidence amounts to a waiver of any legal objection to its being considered by the jury. State v. Guloy, 104 Wash.2d 412, 422, 705 P.2d 1182 (1985). Although Saunders contested the admission of all hearsay evidence on Confrontation Clause grounds, he raised no specific objection to the admission through Keyes and Dr. Andrews of Hieronymus' attributions of fault. Saunders does not contend that the admission of evidence of fault amounted to error of constitutional *751 magnitude, therefore he may not raise it for the first time before this court.
¶ 34 Moreover, even if Saunders properly preserved this challenge, his argument would fail because Hieronymus' identification of her assailant to medical personnel was permissible as a statement "made for the purposes of medical diagnosis or treatment" under ER 803(a)(4). State v. Woods, 143 Wash.2d 561, 602, 23 P.3d 1046 (2001). Here, Keyes and Dr. Andrews examined Hieronymus to treat her injuries and each inquired as to how she obtained her injuries. Hieronymus responded that her boyfriend threw her against a wall and choked her. Her responses to medical personnel were necessary to ascertain the nature of the wounds and to provide her with appropriate medical treatment. Hieronymus' statements identifying the perpetrator in a case of domestic violence are admissible under the statement for medical treatment exception because a doctor or social worker may recommend counseling or escape from the dangerous domestic environment as part of a treatment plan. State v. Sims, 77 Wash. App. 236, 239-40, 890 P.2d 521 (1995) (victim's statements to ER doctor and social worker admissible where identified person who broke victim's jaw was boyfriend). We conclude that the trial court did not abuse its discretion in admitting Hieronymus' statements to the medic and emergency room physician under ER 803(a)(4).

VI. Sentencing and Restitution
¶ 35 Saunders argues, and the state concedes, that the trial court exceeded its authority when it imposed a 12-month suspended sentence for the malicious mischief charge, which carries a maximum sentence of 90 days in jail and a $1,000 fine. See RCW 9A.48.090; RCW 9.92.030. We agree and vacate the sentence and remand for resentencing within the statutory limits.
¶ 36 Finally, Saunders asks this court to vacate the restitution order contending that it is invalid because it was entered ex parte. We agree. Because no notice of the hearing was given to Saunders, the order entered was invalid. It is now too late to hold another hearing. The restitution statute, RCW 9.94A.753(1), states, "the court shall determine the amount of restitution due at the sentencing hearing or within one hundred eighty days". The trial court does not have authority to order a restitution hearing beyond the statutory 180-day limit, and no request for extending the period was made before that period expired. See State v. Tetreault, 99 Wash.App. 435, 998 P.2d 330, review denied, 141 Wash.2d 1015, 10 P.3d 1072 (2000); State v. Johnson, 96 Wash.App. 813, 981 P.2d 25 (1999).
¶ 37 We affirm Saunders' conviction, vacate and remand his sentence for simple malicious mischief in the third degree for resentencing, and vacate the order of restitution.
WE CONCUR: SCHINDLER and BAKER, JJ.
NOTES
[1] Report of Proceedings (July 1, 2003) at 7; 26.
[2] Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Crawford was decided after the trial in this case and applies to all cases still on direct review. See State v. Davis, 154 Wash.2d 291, 298, 111 P.3d 844 (2005); In re Markel, 154 Wash.2d 262, 268-69, 111 P.3d 249 (2005).