[No. 67478-1-I.   Division One.   February 19, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. HECTOR R. HURTADO, *Appellant*.

594

*Lila J. Silverstein* and *Elaine L. Winters* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Andrea R. Vitalich, Deputy*, for respondent.

¶1 Cox, J. — Hector Hurtado appeals his judgment and sentence following his conviction of second degree assault, witness tampering, and two counts of domestic violence misdemeanor violation of a court order. He claims that his Sixth Amendment right to confront witnesses against him as well as his similar right under the state constitution were violated. He also claims that the trial court abused its discretion by admitting inadmissible hearsay, jail telephone recordings of him, and a 911 call recording from the home of the victim. He further claims the jail telephone recording violated his state constitutional right to privacy. Finally, Hurtado claims that the domestic violence designation in his judgment and sentence must be stricken because there was no jury finding that the second degree assault conviction was a crime of domestic violence.

¶2 We hold that the domestic violence victim's statements to medical personnel at the hospital, which were made while a police officer was present and collecting evidence of the alleged crime, were testimonial. Admission of such evidence violated Hurtado's federal constitutional right to confront this witness against him. But the admission of such statements was harmless beyond a reasonable doubt. Hurtado's other claims have no merit. We affirm.

¶3 In 2010, the North King County Regional Communications Center received a 911 call. The dispatcher could

hear an argument between a male and female, but no one responded to the dispatcher's questions. The 911 system identified the call as coming from J.V.'s residential address.

¶4 Two police officers went to this address and found J.V. standing outside the residence. J.V.'s face was swollen and bruised, and the officers called medics.

¶5 The police officers saw what appeared to be drops of blood in the kitchen and living room. One of the officers broadcasted a name and description based on information that J.V. provided when the officers responded to the call. Another officer found Hurtado at a bus stop near J.V.'s home. When the officer arrested him, the officer noticed what appeared to be blood on one of Hurtado's sleeves.

¶6 Meanwhile, the medics who responded to the officers' call took J.V. to a hospital. One of the responding police officers followed J.V. to the hospital. Once there, the officer stayed with J.V. the entire time she was there except when she had "an MRI [magnetic resonance imaging] or a CAT [computer axial tomography] scan." This officer also collected J.V.'s tank top at the hospital because it had blood on it. This clothing was admitted into evidence at trial.

¶7 During her examination at the hospital, J.V. told medical personnel that her boyfriend hit her. The police officer was in the hospital room when she made this statement. J.V. was diagnosed with a broken nose, and she was referred to a social worker.

¶8 After Hurtado was arrested, he made telephone calls from jail. The jail recorded these calls in accordance with standard jail protocols. This included warnings to Hurtado and the other parties to the calls that they were being recorded.

¶9 In one call, Hurtado told a woman, who was not J.V., that he "beat the hell out of" someone. He also said to "tell her not to show up on that day" because "they go and pick her up and they take her probably here."

¶10 Based on the recordings, the State determined that Hurtado had several conversations with J.V. when a no-contact order was in place.

¶11 By amended information, the State charged Hurtado with second degree assault—domestic violence, tampering with a witness, and two counts of domestic violence misdemeanor violation of a court order.

¶12 At trial, J.V. did not testify. It is not clear from the record why the State did not call her to testify. A jury convicted Hurtado of all charges.

¶13 Hurtado appeals.

## CONFRONTATION CLAUSE

¶14 Hurtado argues that his second degree assault conviction should be reversed because his federal right to confrontation was violated. We hold that reversal is not warranted. Admission of J.V.'s statements to medical personnel during the course of treatment in the emergency room while the police officer was present and gathering evidence violated Hurtado's Sixth Amendment right to confront witnesses against him. But that error was harmless beyond a reasonable doubt.

¶15 The Sixth Amendment Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[1] " '[T]he principal evil at which the clause was directed was the civil-law system's use of ex parte examinations and ex parte affidavits as substitutes for live witnesses in criminal cases.' "[2] This practice "denies the

---

[1] U.S. Const. amend. VI.

[2] *State v. Jasper*, 158 Wn. App. 518, 526, 245 P.3d 228 (2010) (*Jasper* I), *aff'd*, 174 Wn.2d 96, 271 P.3d 876 (2012) (*Jasper* II) (alteration in original) (internal quotation marks omitted) (quoting *State v. Lui*, 153 Wn. App. 304, 314, 221 P.3d 948 (2009)).

defendant the opportunity to test his accuser's assertions 'in the crucible of cross-examination.' "[3]

■ ¶16 In *Crawford v. Washington*, the United States Supreme Court held that the right to confrontation renders "testimonial" statements by a nontestifying witness inadmissible unless the witness is unavailable and was previously subject to cross-examination by the defendant.[4] But the *Crawford* Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.' "[5]

■■ ¶17 This court reviews an alleged violation of the Confrontation Clause de novo.[6] When a violation has occurred, this court engages in a harmless error analysis under the constitutional standard.[7]

### *Testimonial Statements*

¶18 Hurtado argues that J.V.'s statements to the emergency room nurse that her boyfriend hit her were testimonial. We agree.

■ ¶19 The Confrontation Clause applies only to testimonial statements or materials.[8] A "testimonial statement" is a " 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.' "[9] The United States Supreme Court has not yet provided a comprehensive definition of what constitutes a testimonial statement.[10] But the Court has listed "three possible formulations for the 'core class' of testimonial statements":

---

[3] *Id.* (quoting *Crawford v. Washington*, 541 U.S. 36, 61, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).

[4] 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[5] *Id.* at 68.

[6] *Jasper* II, 174 Wn.2d at 108.

[7] *Id.*

[8] *State v. Doerflinger*, 170 Wn. App. 650, 655, 285 P.3d 217 (2012).

[9] *Jasper* II, 174 Wn.2d at 109 (internal quotation marks omitted) (quoting *Crawford*, 541 U.S. at 51).

[10] *Crawford*, 541 U.S. at 68.

"[(1)] *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [(2)] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [(3)] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[11]

¶20 In the absence of a comprehensive definition of "testimonial," the Washington supreme court has developed two tests to determine whether an out-of-court statement is testimonial. First, when a declarant makes a statement to a nongovernmental witness, a court uses the "declarant-centric standard" announced in *State v. Shafer*:

"The proper test to be applied in determining whether the declarant intended to bear testimony against the accused is whether a reasonable person in the declarant's position would anticipate his or her statement being used against the accused in investigating and prosecuting the alleged crime. This inquiry focuses on the declarant's intent by evaluating the specific circumstances in which the out-of-court statement was made."[12]

Second, when a declarant makes a statement to law enforcement, a court uses the "primary purpose" test:

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the

---

[11] *Jasper I*, 158 Wn. App. at 527 (alterations in original) (internal quotation marks omitted) (quoting *Crawford*, 541 U.S. at 51-52).

[12] *State v. Beadle*, 173 Wn.2d 97, 107-08, 265 P.3d 863 (2011) (quoting *State v. Shafer*, 156 Wn.2d 381, 390 n.8, 128 P.3d 87 (2006)).

interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[13]

■■ ¶21 For statements made to medical personnel, all three divisions of this court have held that these statements are nontestimonial when the following factors are present: "(1) where they are made for diagnosis and treatment purposes, (2) where there is no indication that the witness expected the statements to be used at trial, and (3) where the doctor is not employed by or working with the State."[14] The second and third factors incorporate *Shafer's* "declarant-centric standard" because the declarant must make the statement to a nongovernmental witness.

¶22 The State has the burden of establishing that a statement is nontestimonial.[15]

¶23 Here, the emergency room nurse, Venus Chenoweth, who testified at Hurtado's trial, stated the following during direct examination:

Q. So you said you changed nurses when you came to [J.V.]?

A. Yes.

Q. Did you receive information from the previous nurse or doctor before you talked to her?

A. Yes. We're supposed to give a nurse-to-nurse report. Because the off-going nurse is supposed to report to the on-coming nurse.

Q. Okay. And is that information contained in exhibit 1?

A. Yes.

Q. What information were you given by this member of the team before you saw her.

A. I was—

---

[13] *Id.* at 108 (quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)).

[14] *State v. Sandoval*, 137 Wn. App. 532, 537, 154 P.3d 271 (2007) (citing *State v. Moses*, 129 Wn. App. 718, 729-30, 119 P.3d 906 (2005)); *see also State v. Saunders*, 132 Wn. App. 592, 603, 132 P.3d 743 (2006); *State v. Fisher*, 130 Wn. App. 1, 13, 108 P.3d 1262 (2005).

[15] *State v. Koslowski*, 166 Wn.2d 409, 417 n.3, 209 P.3d 479 (2009).

DEFENSE COUNSEL: Objection; hearsay.

JUDGE: Overruled.

BY PROSECUTOR:

Q. Continue.

A. I was told the patient in room 123 was assaulted by her boyfriend; police is in there; she's got bruises every; she's got multiple abrasions and bumps all over her face; she was hit in the face with his fists. And so, it's my turn to make my assessment, so I went in and I talked to her briefly—

DEFENSE COUNSEL: Objection; narrative.

JUDGE: Sustained. Try to break it up a little bit.

Q. So you went in there and talked to her and then what?

A. Yes, to do my assessment of her. And yes, she did tell me that she was struck in the face—

DEFENSE COUNSEL: Objection; hearsay.

JUDGE: Overruled.

BY PROSECUTOR:

Q. Continue.

A. She was struck in the face. I asked her, "Are you in pain?" Because the fifth vital signs that we take—we take blood pressure, we take pulse, we take temperature, we take respiration. Pain is the fifth vital sign. You always should ask the patient if they're in pain regardless. And I did. And she said she was not in pain.

Q. How about her other vital signs? How were they?

A. They were normal.

. . . .

Q. Was there anything different about your diagnosis from what you had been told before?

A. No.

Q. Did you refer [J.V.] to a social worker?

A. Yes. She was already referred, and I just checked in with the social worker.[16]

---

[16] Report of Proceedings (July 6, 2011) at 55-57.

Based on this testimony, the first and third factors, that a statement is made for diagnosis and treatment purposes and that the statement is made to medical personnel who are not employed by or working for the State, are satisfied. For the first factor, J.V. answered the nurses' questions about who hit her so they could refer her to a social worker and to ensure she had a safe place to go after leaving the emergency room.[17] For the third factor, there is nothing in the record to show that the testifying nurse was employed or working with the State.

¶24 The issue in this case is the second factor: Whether J.V. had any indication that her statements would be used at trial. The test is whether a "reasonable person in [J.V.'s] position would think she was making a record of evidence for a future prosecution when she told" the nurse that her boyfriend hit her.[18]

¶25 In *State v. Sandoval*, a woman called the police to report that her boyfriend, Erik Sandoval, had assaulted her.[19] A fire truck went to the woman's home, and she was told to go to the hospital and an officer would meet her there.[20] At the hospital, the woman told the emergency room physician that she had been assaulted by Sandoval.[21] The woman did not appear for trial.[22] Division Two of this court concluded that her statements were nontestimonial.[23] One of the facts the court considered was that police officers were not present during the woman's conversations with the physician.[24]

---

[17] *Id.* at 53, 57.

[18] *Saunders*, 132 Wn. App. at 603.

[19] 137 Wn. App. 532, 535-36, 154 P.3d 271 (2007).

[20] *Id.* at 536.

[21] *Id.*

[22] *Id.*

[23] *Id.* at 538.

[24] *Id.*

¶26 Given the highly factual nature of this issue and the lack of other Washington cases with comparable facts, we look to other jurisdictions for guidance. In *State v. Bennington*, the Kansas Supreme Court concluded that a woman's statements to a nurse where a law enforcement officer was present and asked questions were testimonial.[25] There, the State charged Bennington with a number of crimes for sexually attacking and robbing V.B. in her home.[26] V.B. died of a stroke before Bennington's trial, but she made statements about the incident to various parties, including a sexual assault nurse.[27] The nurse asked V.B. to give a narrative statement about the incident while in the presence of a law enforcement officer.[28] At this time, the officer also asked V.B. questions.[29] The nurse's notes incorporated V.B.'s answers to both the nurse's and officer's questions.[30]

¶27 In determining whether V.B.'s statements to the nurse were testimonial, the court applied the "primary purpose" test and looked at the specific circumstances in that case:

> [T]he officer was listening to V.B.'s account of past events, with an eye toward gathering information relevant to prosecution. The officer, who asked questions, gathered this information in a formal setting at a time when there was no indication of an ongoing public safety or law enforcement emergency; the perpetrator had fled hours before the interview. . . . The fact the officer interjected questions makes it apparent from an objective viewpoint that the information was also being sought for potential use in a subsequent prosecution.[31]

---

[25] 293 Kan. 503, 521, 524, 264 P.3d 440 (2011).

[26] *Id.* at 505-06.

[27] *Id.* at 506.

[28] *Id.* at 518.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 521.

While the Kansas Supreme Court applied a different test than the three-factor test that applies to the present case, the court concluded that V.B.'s statements to the nurse were testimonial.[32]

¶28 Here, in contrast to *Sandoval*, Officer Rachel Neff testified that she was with J.V. the entire time she was at the hospital "[e]xcept for when [J.V.] had . . . an MRI or a CAT scan."[33] While the record does not show that the officer asked J.V. questions at the hospital like the officer in *Bennington*, the officer did testify that she collected J.V.'s tank top as evidence because it had blood on it. The nurse also testified that the officer was in the hospital room with J.V. before the nurse went in to talk to J.V. Further, the officer testified that she took a written statement from J.V. at her home before J.V. went to the hospital in an aid car.

¶29 Given these circumstances, a reasonable person would believe that J.V.'s statements made in the presence of a police officer would be used as evidence in a future prosecution. The police officer began her investigation into the incident at J.V.'s home and continued to collect evidence in the examination room. J.V. made her statements to the nurse while the officer was present and gathering evidence. Thus, under the test enunciated by Washington courts, J.V.'s statements were testimonial.

¶30 In addition to *Sandoval*, the State cites several Washington cases to support the assertion that all statements made for the purposes of medical treatment are not testimonial and do not implicate the Confrontation Clause. But like *Sandoval*, those cases are distinguishable. In *State*

---

[32] *Id.* at 521, 524.

[33] Report of Proceedings (July 7, 2011) at 15-16.

*v. Moses,*[34] *State v. Saunders,*[35] and *State v. Fisher,*[36] there were no facts indicating that a police officer was present when the victims made their statements to medical personnel. And as discussed above, J.V. made statements to the nurse when a police officer was present and gathering evidence. The State also cites an Ohio Supreme Court case to support its assertion, but again in that case there were no facts signaling that a police officer was present when the victim made the statement.[37]

¶31 The State argues that the mere presence of a police officer in an emergency room should not transform medical treatment into a police interrogation. But, as discussed above, the officer was more than present. The officer was actively collecting evidence, continuing investigation of the incident that began at J.V.'s home. It would have been reasonable for J.V. to assume from these circumstances that her statements in the officer's presence would be used for prosecution.

¶32 Finally, the State argues that dicta in two United States Supreme Court cases "strongly signal that the Court does *not* view statements made to medical providers during the course of treatment as being testimonial."[38] But again

---

[34] 129 Wn. App. 718, 730, 119 P.3d 906 (2005) (explaining that there was "nothing in the record to indicate [the victim] believed or had reason to believe that her statements to [a doctor] would be used at a subsequent trial").

[35] 132 Wn. App. 592, 603, 132 P.3d 743 (2006) (explaining that there was "no reason to believe that a reasonable person in [the victim's] position would think she was making a record of evidence for a future prosecution when she told [a] paramedic . . . and [doctor] that her injuries occurred as a result of her boyfriend choking her and throwing her against the wall").

[36] 130 Wn. App. 1, 13, 108 P.3d 1262 (2005) (explaining that "there was no indication of a purpose to prepare testimony for trial and no government involvement").

[37] *State v. Fry*, 125 Ohio St. 3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, 1263 (explaining that a victim's statements to a nurse were nontestimonial because the victim " 'could reasonably have assumed that repeating the same information to [the nurse] was for a separate and distinct medical purpose' " (quoting *State v. Stahl*, 111 Ohio St. 3d 186, 2006-Ohio-5482, 855 N.E.2d 834, 846).

[38] Brief of Respondent at 7-8; *see Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) (explaining that cases cited by one party were "simply irrelevant, since they involved medical reports created for

these cases did not involve factual scenarios where a police officer was present and gathering evidence when the declarant made a statement to medical personnel. And, as Hurtado points out, this court need not follow dicta.[39]

¶33 In sum, we hold that the State failed to meet its burden in proving that J.V.'s statements were nontestimonial.

## Unavailability

¶34 Hurtado argues that J.V.'s testimonial statements were inadmissible because the State failed to demonstrate that J.V. was unavailable as a witness and that Hurtado did not have an opportunity to cross-examine her. He contends that admission of J.V.'s testimonial statements violated his Sixth Amendment right to confront J.V. We agree.

¶35 As noted above, under the Sixth Amendment's Confrontation Clause, admission of a testimonial statement by a witness who does not appear at the criminal trial violates the Confrontation Clause unless "(1) the witness is unavailable to testify and (2) the defendant had a prior opportunity for cross examination."[40] The State has the burden of proving that a witness is unavailable.[41]

¶36 "Under the constitutional standard, unavailability requires a 'good faith effort' to secure the presence of the witness at trial."[42] Whether the State has made a "good faith effort" is " 'a question of reasonableness.' "[43] But if "the

treatment purposes, which would not be testimonial under our decision today"); *Giles v. California*, 554 U.S. 353, 376, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008) ("[O]nly *testimonial* statements are excluded by the Confrontation Clause. Statements to friends and neighbors about abuse and intimidation and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules . . . .").

[39] *See, e.g., Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006).

[40] *Beadle*, 173 Wn.2d at 107 (citing *Crawford*, 541 U.S. at 53-54).

[41] *Id.* at 112; *State v. DeSantiago*, 149 Wn.2d 402, 410-11, 68 P.3d 1065 (2003).

[42] *Beadle*, 173 Wn.2d at 113.

[43] *Id.* (internal quotation marks omitted) (quoting *State v. Smith*, 148 Wn.2d 122, 133, 59 P.3d 74 (2002)).

State makes no effort whatsoever to produce the witness, the State cannot rely on the mere possibility that the witness would resist such efforts."[44]

¶37 Here, the State listed J.V. as a potential witness in its trial memorandum. But the State did not call her as a witness at trial. In our independent review of the record, we cannot find any explanation for whether the State made a good faith effort to secure her presence. In the absence of any evidence on the point, we must conclude that the State failed to meet its burden to show that this witness was unavailable.

¶38 Accordingly, under the controlling test, we conclude that the admission of J.V.'s testimonial statements without the required showing by the State was erroneous. But the admission of J.V.'s testimonial statements into evidence without a showing of unavailability does not end our inquiry.

### Harmless Constitutional Error

¶39 Hurtado argues that the introduction of J.V.'s testimonial statements was not harmless beyond a reasonable a doubt and requires reversal of his second degree assault conviction. We disagree.

¶40 The *Chapman v. California*[45] harmless-error standard applies to Confrontation Clause errors.[46] "Under this standard, the State must show 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' "[47]

"Whether such an error is harmless in a particular case depends upon a host of factors . . . includ[ing] the importance of

---

[44] *Id.*

[45] 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

[46] *Jasper* II, 174 Wn.2d at 117 (citing *Chapman*, 386 U.S. at 24; *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)).

[47] *Id.* (quoting *Chapman*, 386 U.S. at 24 and citing *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980)).

the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."[48]

The reviewing court looks at the "untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt."[49]

¶41 Here, neither Hurtado nor J.V. testified. But the State had recordings of a telephone call made with Hurtado's personal identification number. The State presented circumstantial evidence that Hurtado said in one call that he "beat the hell out of" J.V. and he repeatedly urged her not to come to court.

¶42 Further, the public records specialist from North King County Regional Communications Center testified that a 911 call was made from J.V.'s home. Police officers were dispatched to this address, and upon arrival they found J.V. with a bruised and swollen face. One of the officers made a radio dispatch with a suspect's name and description. Based on this name and description, another officer found Hurtado at a bus stop near J.V.'s home. This police officer observed what appeared to be blood on Hurtado's sleeve. Back at J.V.'s residence, an officer noticed what appeared to be blood in the kitchen and in the living room. At the hospital, a nurse observed what appeared to be dried blood on J.V.'s nose.

¶43 The properly admitted evidence overwhelming established that Hurtado was the person who assaulted J.V. Accordingly, the confrontation violation was harmless beyond a reasonable doubt.

---

[48] *Id.* (alterations in original) (quoting *Van Arsdall*, 475 U.S. at 684).

[49] *Moses*, 129 Wn. App. at 732.

## WASHINGTON CONSTITUTION

¶44 Hurtado next argues that his state constitutional right to meet the witnesses against him face-to-face precluded the admission of J.V.'s out-of-court statements. Given our determination that Hurtado's Sixth Amendment right to confront witnesses against him was violated but that this error was harmless beyond a reasonable doubt, we need not reach this argument on the basis of the state constitution.

¶45 The balance of this opinion has no precedential value. Accordingly, under RCW 2.06.040, it shall not be published.

GROSSE and LAU, JJ., concur.

Review denied at 177 Wn.2d 1021 (2013).