COURT OF APPEALS DIV
2014 JUN -9 AM 9: 42


## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,
                Respondent,

v.

FELIPE JOSEPH RAMOS,

                Appellant.

No. 69751-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 9, 2014

SPEARMAN, C.J. — Felipe Ramos challenges his conviction for rape of a child in the first degree, arguing that the trial court erred in concluding that warrantless entry into the victim's home was necessary to provide emergency aid and in admitting statements the victim made to a doctor in the emergency room. Ramos also argues that the prosecutor's statements during rebuttal closing argument constituted reversible misconduct. Finding no error, we affirm.

## FACTS

On the evening of August 1, 2009, Joshua Sykes hosted a small bachelor party at his condominium. Guests on the second floor deck noticed the lights come on in the garage of a condominium on the other side of a shared drive. The interior of the garage was visible through windows in the garage door. They saw an adult male wearing a bathrobe enter the garage with a young girl. A few minutes later, they observed the two having sexual intercourse. A guest alerted Sykes, who returned to the deck and saw what was happening in the garage. Sykes was acquainted with the people who lived in

the condominium as neighbors. He recognized the man as Felipe Ramos and the girl as N.S., who was nine years old at the time. After 10 to 15 minutes of sexual activity, the man carried the girl upstairs.

One of the party guests called 911. When police did not arrive in ten minutes, he called again. Deputy Paul Thiede was dispatched after the second call and arrived at about 10:43 p.m. After speaking to the person who called 911, Deputy Thiede called for backup. Additional deputies arrived between 11:00 p.m. and 11:10 pm. Witnesses said they had not seen anyone leave the condominium. Deputies were posted at the front and back of the condominium to ensure that no one left. Deputy Scott Fitchett then went to the front door of the condominium, continuously knocking and announcing "police." Verbatim Report of Proceedings (VRP) (5/17/12) at 27-28. He received no response. At 11:36 p.m., after more backup arrived, the police decided to enter. They gathered at the front door, knocked, and announced they were coming in. A teenager opened the door, and police entered the residence with guns drawn. As they entered the home and headed upstairs, one officer announced "'police conducting a welfare check.'" Clerk Papers (CP) at 97. Police encountered Ramos and N.S. inside the home. When Ramos and N.S. were brought outside, witnesses identified Ramos as the adult male and N.S. as the young girl they observed having sexual intercourse in the garage.

Ramos was photographed and penile swabs were collected. A forensic deoxyribonucleic acid (DNA) examiner from the Washington State crime laboratory found a DNA profile that was a mixture of two people, with one in 2.7 million individuals in the United States, including N.S., as a possible contributor.

Ramos was arrested and charged with two counts of first degree rape of a child and two counts of first degree child molestation. The State subsequently lost contact with N.S. and her family; she was therefore unavailable to testify at trial. Because one of the first degree rape charges and one of the child molestation charges were based solely on the testimony of N.S., those charges were dismissed without prejudice. A jury convicted Ramos of one count of first degree rape of a child and one count of first degree child molestation. The trial court dismissed the first degree child molestation charge as violative of double jeopardy. Ramos appeals his conviction on the remaining count of first degree rape of a child.

DISCUSSION

Emergency Aid Exception

Ramos argues that the trial court erred in concluding that warrantless entry into the condominium was justified by the emergency aid exception to the warrant requirement and denying his CrR 3.6 motion to suppress evidence obtained from the entry and search. "We review a trial court's denial of a suppression motion to determine whether substantial evidence supports the challenged findings of fact and whether these findings support the trial court's conclusions of law." State v. Bliss, 153 Wn. App. 197, 203, 222 P.3d 107 (2009). "Substantial evidence is 'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (quoting State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)). Conclusions of law are reviewed de novo, and unchallenged findings of fact are verities on appeal. State v. Ague-Masters, 138 Wn. App. 86, 97, 156 P.3d 265 (2007).

3

Warrantless searches are generally per se unreasonable under the Fourth Amendment of the United States Constitution. State v. Kinzy, 141 Wn.2d 373, 384, 5 P.3d 668 (2000). "Nonetheless, there are a few 'jealously and carefully drawn' exceptions" to the warrant requirement which 'provide for those cases where the societal costs of obtaining a warrant ... outweigh the reasons for prior recourse to a neutral magistrate.'" State v. Houser, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980) (quoting Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979). "When the State asserts an exception authorizes its intrusion into private affairs, it bears the heavy burden of establishing that the exception applies." State v. Schultz, 170 Wn.2d 746, 754, 248 P.3d 484 (2011) (citing State v. Johnson, 107 Wn. App. 280, 284 n.11, 28 P.3d 775 (2011)).

The emergency aid exception "emerges from the police's 'community caretaking function' and 'allows for the limited invasion of constitutionally protected privacy rights when it is necessary for police officers to render aid or assistance.'" Schultz, 170 Wn.2d at 754, quoting State v. Thompson, 151 Wn.2d 793, 802, 92 P.3d 228 (2004). To establish the emergency aid exception, the State must show "'(1) the police officer subjectively believed that someone likely needed assistance for health or safety concerns; (2) a reasonable person in the same situation would similarly believe that there was need for assistance; (3) there was a reasonable basis to associate the need for assistance with the place being searched; ... (4) there is an imminent threat of substantial injury to persons or property; (5) state agents must believe a specific person or persons or property are in need of immediate help for health or safety reasons; and (6) the claimed emergency is not a mere pretext for an evidentiary search." Schultz, 170

4

Wn.2d at 754. "[T]he failure to meet any factor is fatal to the lawfulness of the State's exercise of authority." Id. at 760 n. 5.

Ramos argues that the time delay between the first 911 call and the decision to conduct a warrantless entry demonstrates that there was no imminent threat or real emergency.[1] He contends that the initial disbelief that an emergency existed at all, as evidenced by the need for a second 911 call, and the slow methodical way the deputies responded once arriving on the scene, demonstrate that there was no need for immediate action and plenty of time to obtain a search warrant.

We reject this argument and uphold the trial court's ruling that the emergency aid exception applies. The initial 911 call is not in the record, but it appears that there was a misunderstanding regarding what had been reported, as Deputy Thiede initially understood that the caller was the child's stepfather. Deputy Thiede testified that after he arrived at the residence, he decided to call for backup to help him interview witnesses, clarify the situation, and provide officer safety. Less than an hour after he arrived at the scene, the decision was made to enter. The trial court did not err in concluding that the delay was prudent under the circumstances.

The record also shows that multiple witnesses observed a child being raped in the garage, and that she and the suspect were apparently inside the condominium. In State v. Sadler, 147 Wn. App. 97, 124-25, 193 P.3d 1108 (2008), rev. denied, 176 Wn.2d 1032, 299 P.3d 19 (2013)), the court held that it was reasonable for police to

---

[1] Although Ramos assigned error to any factual component of the trial court's conclusions of law as to each of the six factors, his arguments are relevant only to factors four through six. Where a defendant fails to support an assignment of error with citation to relevant authority or relevant facts in the record, the court need not consider it. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). In any case, the record amply supports the trial court's conclusion that all six factors were met.

conclude that leaving a minor alone with a man who was suspected of engaging her in sadomasochistic activities to await a warrant would expose her to additional risks. Similarly, it was reasonable for police to believe there was an imminent threat to N.S., including the possibility that she would be raped again or harmed in an attempt to prevent her from disclosing what happened. The trial court did not err in concluding that "[d]eputies reasonably believed that N.S. was in immediate need of help based on the belief that she and the defendant were still inside and based on the nature of the crime witnessed." CP at 98.

The trial court also concluded that the entry was not a pretext to conduct an evidentiary search. The record shows that there was no evidentiary search of the condominium at the time of the initial entry. Rather, deputies later obtained a warrant and returned to search for evidence. Ramos contends that the deputies should have asked to speak with N.S. rather than entering the residence. But an officer acting pursuant to the community caretaking exception does not need to use the least intrusive means. State v. Hos, 154 Wn. App. 238, 249, 225 P.3d 389 (2010). Moreover, deputies knocked and announced to no avail, making it impossible to inquire as to N.S.'s safety and increasing their concern that N.S. was in need of immediate help.

Accordingly, we conclude that the findings support entry under the community caretaking exception to the warrant requirement, and the trial court did not err by denying Ramos's CrR 3.6 motion based on an unlawful entry.

### Right to Confrontation

After Ramos was arrested, N.S. was brought to an emergency room. There, an emergency room physician asked N.S. whether someone had hurt her that night, and

N.S. said yes, that someone had touched her privates. When asked who had done that, N.S. said it was her mother's boyfriend. N.S. also told the doctor "it hurt to pee." VRP (9/17/12) at 60. Over Ramos's objection, the trial court concluded that these statements were nontestimonial and therefore admissible without violating Ramos's right of confrontation. This court reviews confrontation clause challenges de novo. State v. Koslowski, 166 Wn.2d 409, 417, 209 P.3d 479 (2009) (citing State v. Mason, 160 Wn.2d 910, 922, 162 P.3d 396 (2007)).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him . . ." U.S. Const. Amend. VI. The confrontation clause "bars the admission of testimonial hearsay statements where the declarant does not testify at trial and the defendant had no prior opportunity to confront the witness under oath." State v. O'Cain, 169 Wn.App. 228, 249, 279 P.3d 926 (2012). However, "[n]ontestimonial statements do not implicate the Confrontation Clause." State v. Beadle, 173 Wn.2d 97, 111, 265 P.3d 863 (2011). "Witness statements to a medical doctor are not testimonial (1) where they are made for diagnosis or treatment purposes, (2) where there is no indication that the witness expected the statements to be used at trial, and (3) where the doctor is not employed by or working with the State."[2] State v. Sandoval, 137 Wn. App. 532, 537, 154 P.3d 271 (2007). The State has the burden of proving that a statement is nontestimonial. Koslowski, 166 Wn.2d at 417 n. 3.

---

[2] In dicta, the U.S. Supreme Court has also characterized statements made to medical providers for purposes of diagnosis or treatment as nontestimonial. Michigan v. Bryant, __ U.S. __, 131 S.Ct. 1143, 1157 n. 9, 179 L.Ed.2d 93 (2011); Melendez–Diaz v. Massachusetts, 557 U.S. 305, 312 n. 2, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); Giles v. California, 554 U.S. 353, 376, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008).

As a preliminary matter, the State urges the court to apply the "primary purpose" test. In the context of police interrogations, the U.S. Supreme Court has held that whether statements are testimonial is determined by the primary purpose of the interrogation. Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." Michigan v. Bryant, __ U.S. __, 131 S.Ct. 1143, 1156, 179 L.Ed.2d 93 (2011). The Court, however, has "explicitly reserved the question of 'whether and when statements made to someone other than law enforcement personnel are 'testimonial.'" Bryant, 131 S.Ct. at 1155 n. 3 (quoting Davis, 547 U.S. at 823 n. 2. Because the primary purpose test expressly applies to interrogation by law enforcement officers, we decline to apply it here. Rather, we apply the three-part Sandoval test.

Ramos argues that the second Sandoval factor has not been met because N.S. had indications that her statements would be used at trial. The test is whether a "'reasonable person in [N.S.'s] position would think she was making a record of evidence for a future prosecution. . . .'" State v. Hurtado, 173 Wn. App. 592, 602, 294 P.3d 838, rev. denied, 177 Wn.2d 1021, 304 P.2d 115 (2013). Because N.S. had already been subjected to interviews with deputies at the scene and transported to the emergency room in a police car, Ramos contends that a reasonable person in N.S.'s position would believe that her statements would be used at trial.

We reject this argument. A reasonable person in N.S's position would believe that the statements she had already given to police would be used to prosecute Ramos. There would be no reason for N.S. to conclude that statements she made to a doctor, outside of the presence of police officers, would be used at trial. Rather, the reasonable conclusion is that those statements would be used to obtain appropriate care and treatment for N.S. Ramos's reliance on Hurtado is misplaced. In Hurtado, we held that the victim's statements to an emergency room nurse made in the presence of a law enforcement officer were testimonial, where the officer took a written statement from the victim at her home and continued to gather evidence at the hospital. Hurtado, 173 Wn. App. at 604. Here, no police officer was present when N.S. spoke to the emergency room physician.

## Prosecutorial Misconduct

Ramos argues that the prosecutor violated his constitutional rights to due process and a fair trial by misstating the law regarding presumption of innocence during rebuttal closing argument. To prevail on a prosecutorial misconduct claim, a defendant must show both improper conduct and resulting prejudice. State v. Johnson, 158 Wn. App. 677, 683, 243 P.3d 936 (2010). Prejudice exists only where there is a substantial likelihood the misconduct affected the jury's verdict. State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). "We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005). "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the

resulting prejudice could be cured." State v. Emery, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

In closing argument, defense counsel argued as follows:

> If a person who is a close friend of yours were accused of something like this, I – the particular kind of charge, you might be able to fall back on what you know about them as a person. You might be more inclined to say to the State, 'Prove this to me because I know this person didn't do it.'
>
> Well, I submit to you that the presumption of innocence should be what you find comfort in as you do the difficult work of sifting through the State's evidence and coming to a thoughtful and reasoned conclusion about whether the State has proven its [sic] case here.
>
> The presumption of innocence means you have to treat Mr. Ramos as if you know he's not the sort of person who would do something like this. And you cannot find him guilty unless and until you're actually convinced beyond a reasonable doubt that he did, based on the evidence that the State has presented. VRP (9/24/12) at 66.

The prosecutor responded as follows:

> First, with the presumption of innocence, the basic presumption of innocence. The defendant had the presumption of innocence until I proved, State proved that beyond a reasonable doubt that he committed this crime, which I have done.
>
> But he does not have the presumption for you to believe that, as defense said, that he is the sort of person who would not commit a crime like this. That is not true, that is not accurate, that is not in your jury instructions.
>
> You don't have to presume that he's a nice guy, that he's a good guy, he's got great character. Because you didn't hear any of that.
>
> You presume that he's innocent until the charge is proven beyond a reasonable doubt, and that's all.
>
> Now from the evidence, I'm sure you can conclude he's not such a nice guy given what he did to [N.S.]. But you certainly don't have some presumption that he's a stellar member of the community coming in here.
>
> Simply, that he is not guilty until I proved it beyond reasonable doubt, which I did. VRP (9/24/12) at 89.

Ramos did not object to the prosecutor's comments at trial. Therefore, the argument is waived on appeal "unless the misconduct is so flagrant and ill intentioned that it evinces an enduring and resulting prejudice incurable by a curative instruction." State v. Walker, 164 Wn. App. 724, 730, 265 P.3d 191 (2011) rev. denied, 177 Wn.2d 1026, 309 P.3d 504 (2013). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" State v. Emery, 174 Wn.2d 741, 761, 278 P.3d 653 (2012).

Ramos argues that the prosecutor committed incurable misconduct by suggesting that the presumption of innocence had dissipated prior to jury deliberations. Prosecutors are permitted to argue that the State met its burden of proving the elements of the crime beyond a reasonable doubt. However, "[t]he presumption of innocence continues throughout the entire trial and may only be overcome, if at all, during deliberations." State v. Evans, 163 Wn. App. 635, 643, 260 P.3d 934 (2011). To the extent that the prosecutor's choice of verb tense could be construed to imply that the presumption of innocence had dissipated prior to jury deliberations, it was improper. But even if it was improper, we conclude that any resulting prejudice could have been cured by an instruction.

In State v. Reed, 168 Wn. App. 553, 578, 278 P.3d 203 (2012), the defendant asserted that the prosecutor engaged in incurable prejudicial misconduct by stating in rebuttal argument that the presumption of innocence "'does last all the way until you walk into that [jury] room and start deliberating.'" The court concluded that the statement was improper, but that a curative instruction would have neutralized any prejudice. Id. at

579. Similarly, if Ramos had objected at trial, the court could have clarified that the presumption of innocence continues into jury deliberations regardless of the strength of the State's evidence. "[R]emarks are not per se incurable simply because they touch upon a defendant's constitutional rights." Emery, 174 Wn.2d at 763. Moreover, Ramos has not shown a substantial likelihood that the statements affected the jury's verdict, particularly in light of the evidence against him.

Ramos relies on two cases in which the court held that the prosecutor committed flagrant misconduct by expressly informing the jury that the presumption of innocence does not apply during jury deliberations. Evans, 163 Wn. App. at 643 (prosecutor argued that presumption of innocence "'kind of stops once you start deliberating'"); State v. Venegas, 155 Wn. App. 507, 524, 228 P.3d 813 (2010) (prosecutor argued that presumption of innocence erodes as evidence is heard and at the conclusion of evidence, it no longer exists). But in those cases, the prosecutor's misstatements of the law were much more direct than they were here, there were multiple errors, and the evidence against the defendants was not as compelling.

Affirmed.


WE CONCUR:

_Leach, J._

_Spearman, C.J._

_Becker, J._

12