

**FILED**
**JANUARY 6, 2026**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40444-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK JERAMY LYONS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Patrick Lyons was convicted of assault in the fourth degree with a finding that he and the victim were members of the same family or household. Mr. Lyons appeals, arguing the trial court erred in admitting child hearsay because the State failed to present sufficient evidence that the physical abuse resulted in substantial bodily harm to the child. We disagree and affirm.

No. 40444-7-III
*State v. Lyons*

BACKGROUND

C.L.[1] is the daughter of Mr. Lyons and the granddaughter of Marcia Gunkel. On April 9, 2023, Mr. Lyons approached Ms. Gunkel in the bathroom of his residence while Ms. Gunkel was bathing then six-year-old C.L. Mr. Lyons was "still angry and upset" about an earlier dispute between he and Ms. Gunkel and directed Ms. Gunkel to leave his residence. Rep. of Proc. (RP) at 97. Ms. Gunkel complied and exited Mr. Lyons' house while crying. Though Ms. Gunkel typically assisted C.L. in getting ready for school, she did not do so on April 10 at Mr. Lyons' request. However, Ms. Gunkel traveled to C.L.'s school at the end of the school day after being notified that Mr. Lyons had not picked up C.L.

Ms. Gunkel noticed that C.L.'s "face was swollen and discolored" on her arrival at the school. RP at 102. Ms. Gunkel described C.L.'s nose as discolored, "wider and it had a little bump." RP at 112. Ms. Gunkel transported C.L. to the hospital and made a report to law enforcement. After being evaluated and tested, hospital staff found no indication of broken bones. C.L. was interviewed at the hospital by Officer Kevin

---

[1] To protect the privacy interests of C.L., we use her initials throughout this opinion. Gen. Order of Division III, *In re the Matter of Victims*, (Wash. Ct. App. September 22, 2023), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2023_3&div=III.

2

Hernandez of the East Wenatchee Police Department.  The next day, April 11, C.L.

participated in a child forensic interview through "SAGE," a local domestic violence

advocacy group.  RP at 496.  During the interview, C.L. indicated Mr. Lyons had struck

her in the face.

Mr. Lyons was charged with assault of a child in the third degree, with a special

allegation of domestic violence.  The State later amended the information to add one

count of assault in the fourth degree.

The court conducted a child hearsay hearing in advance of trial as the State sought

to introduce statements made by C.L. to Ms. Gunkel, Officer Hernandez, and Stacy Speer

at SAGE.

Ms. Gunkel testified that when she asked C.L. about her "swollen" face and the

"discoloration," C.L. said, "Daddy" and put her open hand up to her face.  RP at 102-03.

Ms. Gunkel testified that C.L. had a medical condition called Trisomy 12 that caused

physical abnormalities to C.L.  The State played excerpts from the recorded forensic

interview with Ms. Speer at the hearing.  In the recorded interview, C.L. indicated that

Mr. Lyons "slapped" her face.  RP at 278.

At the child hearsay hearing, Officer Hernandez testified that he responded to the

Central Washington Hospital and interviewed C.L. with Ms. Gunkel present.  Officer

Hernandez stated that he asked C.L. what caused her "booboos," and C.L. responded by

motioning with "her palm" "towards her face" to demonstrate "how she was hit."  RP at

247. Officer Hernandez testified that C.L. was indicating that she was hit with "an open palm." RP at 248. Officer Hernandez confirmed that C.L. had a "swollen left eye," and "bruising to the bottom of [her] eye." RP at 251.

The State argued for the admission of C.L's out-of-court statements under the child hearsay statute. Mr. Lyons argued C.L.'s out-of-court statements were not admissible under the child hearsay statute because her injuries did not rise to the level of substantial bodily harm. The trial court found there was sufficient evidence of substantial bodily harm and concluded C.L.'s out-of-court statements to Ms. Gunkel, Officer Hernandez, and Ms. Speer were admissible.

The case proceeded to a jury trial. Consistent with the court's pretrial ruling, C.L.'s statements to Ms. Gunkel, Officer Hernandez, and Ms. Speer were presented to the jury. Ms. Gunkel testified that "[C.L.'s] face didn't look normal to [her]" when she picked up C.L. and that "[C.L.'s] nose was not right, and she had swelling above her eye, and—on her face." RP at 545. Ms. Gunkel stated that when she asked C.L. about the injuries, C.L. said, "Daddy" and held her hand up to her face. RP at 545. Officer Hernandez testified that he observed at the hospital that C.L. had "swelling below her left eye. And there was—light bruising across the bridge of her nose." RP at 644. The State played excerpts of Officer Hernandez's body camera recording where Officer Hernandez asks, "Is that what caused your booboos? Dad hitting you?" RP at 648. The State also played an excerpt from Ms. Speer's interview with C.L. where C.L. indicated that Mr.

Lyons "slapped" her "on [her] eye." RP at 670-71. C.L. can be seen in the recording pointing to her eyes, and she indicated that Mr. Lyons "slapped" her "really hard" and that she had an "owee" on her eye. Ex. 1, clip 2.

The jury ultimately found Mr. Lyons not guilty of assault of a child in the third degree and guilty of assault in the fourth degree. The jury also returned a special verdict, finding Mr. Lyons and C.L. were members of the same family or household. Mr. Lyons was later sentenced.

Mr. Lyons timely appealed.

ANALYSIS

Mr. Lyons contends the trial court erred in admitting C.L.'s out-of-court statements because the State presented insufficient evidence of substantial bodily harm for purposes of the child hearsay statute. We disagree.

We review a trial court's decision to admit child hearsay statements for an abuse of discretion. *State v. Beadle*, 173 Wn.2d 97, 112, 265 P.3d 863 (2011). The court abuses its discretion when it rests its decision on unreasonable or untenable grounds. *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003). A court's "decision is based on 'untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

RCW 9A.44.120 allows hearsay, not otherwise admissible under a statute or court rule, to be admitted in a criminal case provided "[i]t is made by a child when under the age of ten," and they are "describing any act of physical abuse of the child by another that results in *substantial bodily harm*." RCW 9A.44.120(1)(a)(i) (emphasis added). For a child's out-of-court statement to be admissible, the court must also find that "the time, content, and circumstances of the statement provide sufficient indicia of reliability." RCW 9A.44.120(b). In determining the reliability of the child hearsay, the court evaluates nine factors, commonly referred to as the "*Ryan* factors." *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).

Mr. Lyons does not argue the court improperly applied the *Ryan* factors. Rather, he contends the trial court failed to distinguish between "substantial bodily harm" and mere "bodily harm," resulting in an error of law. The State responds that the trial court properly interpreted the meaning of "substantial bodily harm" based on the plain reading of the statute, legislative intent, and relevant case law. Thus, the State argues the issue before us is the meaning of "substantial bodily harm" within the child hearsay statute, RCW 9A.44.120 and as defined by RCW 9A.04.110(4)(b). Because "substantial bodily harm" as used in the statute has already been defined by our Supreme Court, we need not determine the proper definition. Instead, we need only determine whether the court properly found C.L.'s injuries rose to the level of "substantial bodily harm."

6

Preliminary questions of fact concerning the admissibility of evidence "shall be determined by the court." ER 104(a). In making such determinations, the trial court "is not bound by the Rules of Evidence except those with respect to privileges." ER 104(a). A preponderance of the evidence standard is applied to questions of preliminary fact in determining the applicability of hearsay exceptions. *State v. Guloy*, 104 Wn.2d 412, 420, 705 P.2d 1182 (1985).

RCW 9A.04.110(4)(b) defines "substantial bodily harm" as "a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." Under RCW 9A.04.110(4)(a), "bodily harm" is defined as "physical pain or injury, illness, or an impairment of physical condition."

In *State v. McKague*, our Supreme Court held that "substantial" within the meaning of the statute for assault in the second degree, "signifies a degree of harm that is considerable and necessarily requires a showing greater than an injury merely having some existence." 172 Wn.2d 802, 805-06, 262 P.3d 1225 (2011). The court clarified, "While we do not limit the meaning of 'substantial' to any particular dictionary definition, we approve of the definition . . . 'considerable in amount, value, or worth.'" *Id.* at 806 (quoting WEBSTER'S THIRD INTERNATIONAL DICTIONARY 2280 (2002)). In applying that definition, the court noted that the victim's "resulting facial bruising and swelling lasting several days, and the lacerations to his face, the back of his head, and his

7

arm" were enough "to find that the injuries constituted substantial but temporary disfigurement." *Id.*

Similarly, in *State v. Ashcraft*, this court found there was sufficient evidence of substantial bodily harm in a child abuse case where doctors observed bruises on the victim that were consistent with being hit by a shoe and that "[t]he presence of the bruise marks indicate temporary but substantial disfigurement." 71 Wn. App. 444, 455, 859 P.2d 60 (1993). In *State v. Hovig*, this court relied on the reasoning and holding in *Ashcraft* and agreed that "serious bruising can rise to the level of 'substantial bodily injury.'" 149 Wn. App. 1, 13, 202 P.3d 318 (2009). The court determined that there was enough to constitute substantial bodily harm when photographs taken hours after the child was bitten showed visible bruising to his cheek. *Id.* at 5-6, 13

Here, Mr. Lyons argues the trial court should have declined admission of C.L.'s out-of-court statements because the State failed to present sufficient evidence of C.L. suffering substantial bodily harm. We are unpersuaded by Mr. Lyons' argument since the trial court only had to determine by a preponderance of the evidence whether C.L. incurred substantial bodily harm.

In support of its contention that C.L. suffered substantial bodily harm, the State presented evidence that C.L.'s "face was swollen and discolored," and her nose "was wider and it had a little bump." RP at 102, 112. Officer Hernandez testified that C.L. had a "swollen left eye" and "bruising to the bottom of [her] eye." RP at 250-51.

No. 40444-7-III
*State v. Lyons*

Consistent with *Hovig* and *McKague*, C.L.'s visible bruises, swelling, and discoloration were inflicted on her face rather than another area of her anatomy, such as her buttocks or extremities.

The presence of C.L.'s visible bruises, swelling, and discoloration of her face sufficiently supports the trial court's finding that she suffered temporary but substantial disfigurement for purposes of RCW 9A.44.120. Because C.L.'s injuries fall within the meaning of substantial bodily harm, the trial court did not abuse its discretion in admitting C.L.'s out-of-court statements.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Murphy, J.

9